[No. B158817. Second Dist., Div. Four. Jan. 28, 2004.]

RICHARD SLANEY, Plaintiff and Respondent, v.
RANGER INSURANCE COMPANY et al., Defendants and Appellants.

**COUNSEL**

Sedgwick, Detert, Moran & Arnold, Christina J. Imre and Douglas J. Collodel for Defendant and Appellant Ranger Insurance Company.

Manning, Marder, Kass, Ellrod & Ramirez, Michael McCarthy, David J. Wilson and David L. Scott for Defendants and Appellants Arthur Wasserman and Law Offices of Wasserman & Miller.

Barger & Wolen, Gregory O. Eisenreich and Theodore H. Swanson for Signal Aviation Underwriters, Inc., Underwriters Adjustment Bureau and Universal Loss Management, Inc., as Amici Curiae on behalf of Defendant and Appellant Ranger Insurance Company.

Mark F. Didak and Richard C. DuPar for Plaintiff and Respondent.

Oᴘɪɴɪᴏɴ

## HASTINGS, J.—

### INTRODUCTION

This appeal reaches us after the denial of a special motion to strike pursuant to Code of Civil Procedure section 425.16, the so-called anti-SLAPP statute.[1] The complaint to which the motion was directed is for malicious prosecution brought by respondent Richard Slaney. Named as defendants in the action are appellants Ranger Insurance Company, the Law Officers of Wasserman & Miller, and Arthur Wasserman, individually.

The underlying action giving rise to this claim resulted from Ranger's denial of a claim by its insureds for damages to an aircraft owned by the insureds. On behalf of the insureds, Slaney prepared an estimate for repair of the aircraft in support of the claim. Ranger denied the claim asserting that its insureds and Slaney had presented a fraudulently excessive claim. The insureds sued Ranger and others for bad faith, among other causes of action. Ranger cross-complained against its insureds and Slaney, alleging fraud in connection with the claim. Slaney initially moved unsuccessfully for summary judgment, but successfully renewed the motion after discovery and was dismissed from the action. After a jury trial, the insureds prevailed and obtained an award of compensatory damages in excess of $1 million for bad faith. The jury also concluded that Ranger's denial of the claim, based in part upon its assertion that the insureds and Slaney were attempting to defraud it, was malicious. Punitive damages in excess of $7 million were assessed.

Slaney filed this suit against appellants. Wasserman and his law firm noticed the SLAPP motion, which was joined by Ranger. They contended that when the trial court denied the original motion for summary judgment brought by Slaney on the cross-complaint, it constituted a finding of probable cause, citing *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 383–384 [90 Cal.Rptr.2d 408]. The trial court disagreed and concluded that Slaney presented sufficient evidence to establish a probability of prevailing.

In the context of this action, we conclude that the original denial of the motion for summary judgment brought by Slaney does not establish probable

---

[1] SLAPP is an acronym for "strategic lawsuits against public participation." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 813 [33 Cal.Rptr.2d 446].) A special motion to strike a SLAPP action, codified in Code of Civil Procedure section 425.16, provides a procedural remedy to gain an early dismissal of a lawsuit or a cause of action that qualifies as a SLAPP. (*Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141, 150 [106 Cal.Rptr.2d 843].)

cause as a matter of law, as asserted by appellants. Additionally, we conclude that the judgment rendered against Ranger, which included a finding of malice and an award of punitive damages, and other evidence presented by Slaney, demonstrates a potential for recovery in this action. Accordingly, we affirm the trial court's denial of the SLAPP motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.  *The Underlying Lawsuit*

Sean and Nadia Roberts are principals of Flight Research, Inc., and National Test Pilot School, Inc. They insured a Firecracker aircraft through Ranger Insurance Company. The aircraft sustained extensive damage in an accident during a landing. The Roberts made a claim to Ranger for damage resulting from the accident. Underwriters Adjustment Bureau, and others, were involved in adjusting the claim.

Richard Slaney was the prior owner of the Firecracker and still owned the engineering design drawings and jigs for the aircraft.[2] The Roberts' attorney asked Slaney to assist with the claim by inspecting the airplane and providing a repair estimate. Slaney did so and provided an estimate of between $275,000 and $300,000.

Ranger obtained an independent repair estimate of between $120,000 and $150,000. Ranger's agent, Steve Culbertson, also an insured of Ranger's, sought to rent the drawings and jigs from Slaney to facilitate repair of the aircraft. Slaney agreed to do so for $30,000. Culbertson apparently refused to sign the rental agreement based upon Ranger's objections to a contractual indemnity provision. Ranger then denied the Roberts' claim, contending that Slaney was conspiring with the Roberts to defraud Ranger by submitting an inflated claim.

The Roberts sued Ranger, Universal Adjustment Bureau, and the principal adjuster, Paul Leonard, for bad faith handling of their claim.

On behalf of Ranger, appellant Arthur Wasserman filed the cross-complaint alleging various claims including the fourth cause of action for fraudulent conspiracy between Slaney, the Roberts, and others. Following is the charging allegation of the fourth cause of action: "That cross-complainant alleges, based upon information and belief, that cross-defendants, Richard Slaney and Roes 11-20, actively conspired with all remaining cross-defendants, and each of them, to inflate the cost of repairs to the subject 1983 Firecracker NDN-1T

---

[2] A jig is a pattern used for manufacturing a new airplane part.

aircraft and tamper with the value of the aircraft salvage in order to force cross-complainant into paying for a loss as a destroyed aircraft when the aircraft could have been reasonably repaired. As part and parcel of conduct of cross-defendants, and each of them, there was a misrepresentation of material facts with the intention to coerce, cheat and defraud Ranger into paying more tha[n] was required under the aircraft insurance contract."

Slaney sought summary judgment on the cross-complaint three separate times. In his initial motion, Slaney contended that Ranger would be unable to prove a conspiracy or that it relied on any representations made by him. Slaney declared in support of his motion that he was the prior owner of the aircraft and that he had purchased the drawing and jigs along with the aircraft. After the accident he was contacted by counsel for the Roberts and asked to help estimate the cost of repairs to the aircraft. He was not in the repair business and he was never interested in performing repairs on the aircraft. Rather, he was primarily concerned that the aircraft be properly repaired for safety reasons. He agreed to rent his drawings and jigs so that new ones would not have to be made, but the rental agreement was never executed. He denied inflating the scope of the necessary repair work.

Ranger opposed the motion. It contended that Slaney and the Roberts inflated the cost of repairs so that the aircraft would be declared a total loss, the Roberts would be paid the full amount of the loss, and Slaney would then be able to buy the wreckage cheaply. Various declarations were referenced as being submitted in support of this theory, but the record on appeal does not contain the declarations.[3]

This initial motion was denied. The trial court issued the following order: "A triable controversy exists with respect to whether or not cross-defendants, Slaney and Roberts, conspired to inflate the costs of repair in order to obtain a higher cost of repair, supporting cross-complainants' claims of interference of contract/reverse bad faith and fraud. The evidentiary facts and inferences drawn from the Declarations of Paul Leonard, Steve Culbertson, Jim Smith and Ronnie Powers, which are based on their expertise in the aviation insurance adjustment and aircraft repair business, include Mr. Slaney's conduct in assisting the Roberts in frustrating all efforts and, ultimately, preventing the settlement of the Roberts' aircraft physical damage claim by substantially inflating the costs involved and their interest in having the aircraft considered a 'total loss.' As further evidenced by the above-referenced Declarations, the conduct of Mr. Slaney and the Roberts included submission of an invalid repair estimate, inasmuch as Mr. Slaney was not in the business of aircraft repair and was not an F.A.A. certified mechanic, as well as the

---

[3] The declarations referenced are those of Paul Leonard, Culbertson, Wasserman, Jim Smith, and Ronnie Powers. They are not attached to the opposition papers contained in this record.

insistence that the aircraft repair could only be conducted with the use of Mr. Slaney's plans and jigs, the required payment of $30,000.00 for the use of said plans and jigs and the interest in obtaining the salvage."

The trial court denied Slaney's first renewed motion for summary judgment on procedural grounds.

Slaney prevailed on his second renewed motion for summary judgment. He presented new evidence, developed through discovery, which, he argued, demonstrated no factual support for either Ranger's conspiracy theory or that Ranger relied upon anything Slaney represented in connection with the Roberts claim. The trial court, a different judge from the one hearing the first two motions, agreed. The order granting summary judgment states:

"On September 22, 2000, Cross-defendant Slaney's Motion for Summary Judgment came on for hearing. At the hearing, counsel for Ranger referred the court for the first time to the decision in *Bagley vs. TRW, Inc.* 73 Cal.App.4th 1092 [86 Cal.Rptr.2d 909] (1999). Counsel relied upon *Bagley* for the proposition that this court was without jurisdiction to hear Slaney's present motion because another judge of this court had previously denied a similar motion. At the hearing, the court indicated a desire to compare Slaney's former motion with the present motion in order to determine if *Bagley* barred the court from hearing the present motion. In order to save the parties a return trip to the court, the court announced its ruling on Slaney's motion, subject to such ruling being withdrawn if the Court concluded the present motion was barred by *Bagley*.

"The court has now compared the present and former motions filed by Slaney. The court observes that, in order for it to have jurisdiction to hear the current motion, it must be concluded that the motion presents 'newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion.' (Code Civ. Proc. § 437c [subd.] (f)(2).)

"As stated, the court has reviewed Slaney's prior motion and the court's ruling thereon. Based on this review, the basis of the court's denial of Slaney's earlier motion is not clear. The only evidence presented in the first motion relating to Ranger's lack of reliance consisted of a declaration of defendant Nadia Roberts and a letter from Ranger's adjuster, Leonard. In this court's view, this evidence was inconclusive to establish whether Ranger relied on any estimate prepared by Slaney. Stated otherwise, *this court believes the judge ruling on Slaney's first motion did not have sufficient evidence before him to justify a conclusion that Ranger did not rely on Slaney's estimate.*

"Since the ruling on Slaney's first motion, additional depositions have been taken. In these depositions, the testimony of Ranger's adjuster, Leonard, *conclusively demonstrates Ranger did not rely on Slaney's estimate*. This conclusive evidence constitutes 'newly discovered facts or circumstances' since it greatly enhances the weight of Slaney's reliance argument. Accordingly, the court affirms the ruling made in open court on September 22, granting Slaney's motion for summary judgment.

"The court granted Slaney's motion based on the facts the evidence presented by Slaney shifted the burden to Ranger and *the latter failed to produce any evidence either that Slaney conspired to defraud Ranger or that Ranger relied on any estimate prepared by Slaney*." (Italics added; fn. omitted.)

The Roberts' bad faith action against Ranger went to trial. In a special verdict, the jury concluded that Ranger owed $651,939 for damage to the aircraft under the terms of the insurance policy. It also found that Ranger was guilty of bad faith and awarded an additional $1,151,075 for compensatory damages. The jury answered "yes" to the following two questions and assessed punitive damages of $7,222,500 against Ranger:

"Do you find by clear and convincing evidence that Defendant RANGER INSURANCE COMPANY is guilty of oppression in the conduct upon which you base your finding of liability for bad-faith dealings with Plaintiffs FLIGHT RESEARCH, INC., and NATIONAL TEST PILOT SCHOOL?

"Do you find by clear and convincing evidence that Defendant RANGER INSURANCE COMPANY was guilty of malice in the conduct upon which you base your findings of liability for bad-faith dealings with Plaintiffs FLIGHT RESEARCH, INC., and NATIONAL TEST PILOT SCHOOL?"

Judgment was entered on the special verdict. The judgment included the following language relating to the cross-complaint: "During trial, with respect to the Cross-complaint filed by Cross-complainant RANGER INSURANCE COMPANY against Cross-defendants NATIONAL TEST PILOT SCHOOL; FLIGHT RESEARCH, INC.; SEAN ROBERTS; NADIA ROBERTS; and FLIGHT RESEARCH, INC., OF MISSISSIPPI, the Court made the following rulings upon motion by Cross-defendants: the Second, Third and Fourth Causes of Action were dismissed *as being without any substantive basis in law and/or fact*." (Italics added.)

2. *This Action*

In December 2001, Slaney filed his complaint. It alleges two causes of action: the first for malicious prosecution, and the second for conspiracy to

commit malicious prosecution. The primary charging allegations are contained in paragraph 16 of the complaint: "16. Ranger alleged in its Cross-Complaint [in the underlying action], and in the prosecution thereof, that the Roberts wanted the Firecracker declared a total loss rather than to have it repaired; that in order to assist in having the Firecracker declared a total loss, and for his own benefit, plaintiff [Slaney] had purposely overstated his estimate of the costs of repairing the Firecracker in an effort to have it declared a total loss so he could purchase the salvage at a bargain price; that plaintiff bribed or attempted to bribe a company which had estimated the salvage value on the Firecracker to withdraw its estimate so he could purchase the salvage instead, at a favorable price; that plaintiff had misrepresented his interest in the plans and jigs for the Firecracker and did not own the exclusive rights to them; that plaintiff had attempted to conceal his large financial interest in the Claim which existed because he still owed money on a loan he had obtained when he still owned the Firecracker, and which was secured by it; and that Ranger had reasonably relied to its detriment upon plaintiff's estimates and representations. Those allegations were false, and known by Ranger and Lawyer Defendants to be false, in that the Roberts always wanted to have the Firecracker repaired, not totaled; plaintiff did not overstate his estimate of the costs of repairing the Firecracker; plaintiff did not desire to have the Firecracker declared a total loss so he could purchase the salvage at a bargain price or for any other reasons; plaintiff nether bribed nor attempted to bribe a company which had estimated the salvage value on the Firecracker to withdraw its estimate; plaintiff had not misrepresented his interest in the plans and jigs for the Firecracker and did own the exclusive rights to them; plaintiff did not owe anything on the loan he had obtained when he still owned the Firecracker, having paid off the loan in full in or about 1990; and that Ranger had not relied in any way upon plaintiff's estimates and representations. The false allegations were based upon testimony from defendant Leonard and others known by Ranger and Lawyer Defendants to be false, or which they later learned to be false, such that the continued prosecution of the Cross-Complaint thereafter, by, among other things, the continued proffering of the false and perjurious testimony as evidence in opposition to plaintiff Richard Slaney's motion for summary judgment on the Cross-Complaint, was actually malicious and without probable cause."

Wasserman demurred to the complaint and filed two motions to strike, a special motion to strike pursuant to Code of Civil Procedure section 425.16, and a motion to strike pursuant to Civil Code section 1714.10, subdivision (a). Ranger also demurred to the complaint and joined in Wasserman's special motion to strike.[4]

---

[4] Code of Civil Procedure section 425.16, subdivision (j) provides that an order granting or denying a special motion to strike is an appealable order. (See *Mattel, Inc. v. Luce, Forward,*

Wasserman raised two arguments in his special motion to strike. First, citing *Roberts v. Sentry Life Insurance, supra,* 76 Cal.App.4th 375, he argued that denial of the original motion for summary judgment established, as a matter of law, that the cross-complaint was prosecuted with probable cause. Second, he argued that his actions in filing and prosecuting the cross-complaint were privileged pursuant to Civil Code section 47, subdivision (b).[5]

In opposition, Slaney argued that probable cause and malice could be inferred from the results obtained in the underlying action: that he ultimately obtained summary judgment in his favor on the cross-complaint; that Ranger's cross-complaint was dismissed by the trial court for lack of factual and legal basis; and because the jury found bad faith and malice in connection with denial of the claim. In support of his opposition, respondent proffered the declarations of Clay Robbins III and Mark F. Didak.

Clay Robbins III was trial counsel for the Roberts in the underlying action. In his declaration he summarized his closing argument from the underlying trial: "One of the main theories I argued to the jury in support of my clients' claim of bad faith, malice, oppression, and damages (including punitive damages) was that Ranger, through Paul Leonard, had wrongfully denied my clients' claim under the Ranger policy for damage to their Firecracker aircraft, and that in an effort to avoid liability on the Roberts' insurance claim it went so far as to knowingly and maliciously trump up the false claim that my clients and Mr. Slaney had conspired to defraud Ranger. As I also noted in my closing arguments, the false claim was ultimately the subject of the underlying cross-complaint against my clients and Mr. Slaney which was drafted, at least in part, by Paul Leonard, and filed and prosecuted on Ranger's behalf by Arthur Wasserman and his law firm. This theory, like all the theories of liability I argued to the jury, was supported by substantial evidence presented at trial. That evidence is contained in the record on appeal of *Roberts v. Ranger.* Inasmuch as Ranger appealed the judgment and has not yet filed its opening brief, I have not yet prepared a statement of facts for the Roberts' respondents' brief and therefore cannot yet cite to the supporting evidence by volume, page and line number. However, the evidence is accurately summarized in my closing arguments contained in volume 22 of 24 of that transcript, a true and correct copy of which is being lodged with Mr. Slaney's request for Judicial Notice in conjunction with his opposition to

---

*Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1189–1190 [121 Cal.Rptr.2d 794].) Because this appeal is authorized only in connection with the motion to specially strike, we do not further address the demurrers or the other motion to strike.

[5] The Supreme Court in *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 737 [3 Cal.Rptr.3d 636, 74 P.3d 737], reconfirmed its prior statement from *Silberg v. Anderson* (1990) 50 Cal.3d 205, 216 [266 Cal.Rptr. 638, 786 P.2d 365], that " 'The only exception to application of [the litigation privilege] to tort suits has been for malicious prosecution actions.' " Given this reaffirmation, it is understandable that appellant does not address this issue on appeal.

the instant special motion to strike. As the judgment in *Roberts v. Ranger* reflects, neither this theory nor any other I argued was rejected by the jury and therefore is subsumed within the judgment."

The declaration of Mark Didak incorporated excerpts from the argument of Clay Robbins III.

In addition, respondent requested that the court judicially notice the following: "1. The February 27, 2001 judgment in the underlying case, a true and correct copy of which is attached to Plaintiff's Request for Judicial Notice in conjunction with the Demurrer of Ranger Insurance Company as Exhibit 1. [¶] 2. The appellate trial transcript, vol. 22 of 24, in the underlying case, *Roberts v. Ranger, etc., et al.,* Los Angeles Superior Court case No. LC042481, a true and correct copy of which is lodged here with. [¶] 3. Plaintiff's Opposition to Demurrer of Ranger Insurance Company."

Appellants filed objections to the declarations of Clay Robbins III, Mark Didak and the excerpts from the closing argument: "Defendants . . . hereby object to the declaration of Clay Robbins, III, as well as to the trial transcript of Mr. Robbins' closing argument, to the extent that submission of either item by plaintiff constitutes an attempt to submit admissible evidence to meet plaintiff's burden to establish a probability of prevailing on the merits of his cause of action. This evidentiary objection is made on the grounds that the argument of counsel cannot constitute admissible evidence. (See, e.g., *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1320 [88 Cal.Rptr.2d 758]; *People v. Perez* (1992) 2 Cal.4th 1117, 1126 [9 Cal.Rptr.2d 577, 831 P.2d 1159] ['It is elementary, however, that the prosecutor's argument is not evidence and the theories suggested are not the exclusive theories that may be considered by the jury.'].)"

At the hearing on the special motion to strike, the following exchange took place between the court and counsel for Wasserman and his firm, Mr. Scott, regarding the objections: "[MR. SCOTT]: Now, secondly as to the Anti-SLAP[P] motion, the case law makes it clear that in order to meet the probability of success standard, the second element, you have to produce admissible evidence. The only evidence that will be considered is that which will be admissible at trial. And there are numerous cases that set that forth. For example—[¶] THE COURT: I only considered—I only considered the judgments and the orders of the courts. [¶] MR. SCOTT: The judgments and the orders of the court in the underlying matter? [¶] THE COURT: Yes. [¶] MR. SCOTT: Okay. Along those lines, I assume that for the record we would need a ruling on our evidentiary objections because he is—[¶] THE COURT: I only considered the rulings and the orders of the courts. Everything else was either sustained or I on my own did not look at it. [¶] MR. SCOTT: Okay. [¶]

THE COURT: And consider it. [¶] MR. SCOTT: Then as far as the showing that is required—[¶] THE COURT: And it's sustained as to all of the hearsay stuff about your clients and all of that."

We conclude from this exchange that the court sustained appellants' objections and excluded evidence from the declarations of Clay Robbins and Mark Didak, including reference to the argument Robbins made in the underlying action. It accepted only the judgment and the orders denying and granting summary judgment from the underlying action.[6]

The trial court denied the special motion to strike, concluding that Slaney made a "valid showing of probability of success on the First cause of action."

Appellants filed timely notices of appeal.

Further facts will be presented in connection with the discussion.

## DISCUSSION

Code of Civil Procedure section 425.16, the anti-SLAPP statute, "permits a court to dismiss certain types of nonmeritorious claims early in the litigation. [Citation.]" (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 [114 Cal.Rptr.2d 825].)

"Resolution of an anti-SLAPP motion 'requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which plaintiff complains were taken 'in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche, supra,* 31 Cal.4th at p. 733, hereafter *Jarrow Formulas.*)

---

[6] On appeal respondent does not address the propriety of these evidentiary rulings, but he requests that we judicially notice the reporter's transcript and the argument of Robbins. While we may judicially notice the *existence* of the reporter's transcript, appellant's failure to challenge the trial court's rulings precluding use of the transcript in opposition to the special motion to strike results in waiver of their use on appeal. (*Marketing West, Inc. v. Sanyo Fisher (USA Corp.)* (1992) 6 Cal.App.4th 603, 607, fn. 1 [7 Cal.Rptr.2d 859]; *In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 278 [268 Cal.Rptr. 83].) This leaves the judgment and orders relating to the motions for summary judgment from the underlying action to reflect whether respondent may prove the elements of probable cause and malice.

Turning to the first step, the Supreme Court in *Jarrow Formulas* addressed whether a claim for malicious prosecution fell within section 425.16 and concluded in the affirmative: "As the Court of Appeal noted, LaMarche was sued for filing a cross-complaint in the former municipal court and Brutzkus, her attorney, for written and oral statements he made while acting as an advocate for LaMarche in the municipal court action. Accordingly, the Court of Appeal reasoned, this action falls within the ambit of a 'cause of action against a person arising from any act . . . in furtherance of the person's right of petition' (§ 425.16, subd. (b)(1)), as statutorily defined. [¶] As a plain language matter, the Court of Appeal unquestionably was correct." (*Jarrow Formulas, supra,* 31 Cal.4th at p. 734.)

■ We turn to the second step: whether respondent presented evidence sufficient to "establish[] that there is a probability that [he] will prevail on the claim." (§ 425.16, subd. (b)(1).) In "making [that] determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) The evidence submitted by the plaintiff must be admissible (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 654 [49 Cal.Rptr.2d 620]), and, if credited at trial, must support a judgment in his favor. (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 845 [111 Cal.Rptr.2d 582]; *M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 636–637 [107 Cal.Rptr.2d 504].) Significantly, the trial court cannot and does not weigh the moving party's evidence against the opposing party's evidence, but addresses the factual and legal issues as in a motion for summary judgment. (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365 [102 Cal.Rptr.2d 864].) If the opposing party fails to make the requisite showing, the motion must be granted. (*Conroy v. Spitzer* (1999) 70 Cal.App.4th 1446, 1450 [83 Cal.Rptr.2d 443].)

■ We review the trial court's determination de novo, much like the standard for determining a motion for nonsuit or directed verdict. (*M.G. v. Time Warner, Inc., supra,* 89 Cal.App.4th at pp. 629–630.)

■ The three primary elements necessary to establish liability for the claim of malicious prosecution are that a prior claim initiated by the appellants was: "(1) pursued to a legal termination favorable to the plaintiff [Slaney]; (2) brought without probable cause; and (3) initiated with malice. [Citations.]" (*Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1335 [6 Cal.Rptr.2d 644].)

The parties do not dispute that the underlying lawsuit was favorably terminated when the trial court granted respondent's third motion for summary judgment. Thus, we turn to the issues of probable cause and malice.

"*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863 [254 Cal.Rptr. 336, 765 P.2d 498], states the controlling test for determining whether a claim is supported by probable cause. The question is whether, as an objective matter, 'any reasonable attorney would have thought the claim tenable.' [Citation.] The answer depends upon the state of the law as well as the state of the facts. [Citations.] Thus the question is whether the claim was 'objectively tenable' [citation] or 'objectively reasonable' [citation], or that the attorney had 'a reasonable belief in the possibility of his suit being successful' [citation], in light of all relevant circumstances, including the factual circumstances peculiar to the specific case and the existing state of the law." (*Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 594 [71 Cal.Rptr.2d 657].) Stated otherwise, an attorney "will lack probable cause for his action if he relies upon facts which he has no reasonable cause to believe to be true, or seeks recovery upon a legal theory which is untenable under the facts known to him." (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 568 [264 Cal.Rptr. 883].)

At this point it is important to note that in the trial court the only evidence Wasserman proffered on the issue of probable cause was that Slaney's original motion for summary judgment had been denied. He offered no evidence that he or anyone in his firm had undertaken an investigation to determine reasonable cause to believe the allegations within the cross-complaint regarding conspiracy to defraud had any basis in truth. As previously noted, Ranger joined in Wasserman's motion.

Citing *Roberts v. Sentry Life Insurance, supra,* 76 Cal.App.4th 375, appellants reprise their argument on appeal: that denial of the original motion for summary judgment, as a matter of law, demonstrates probable cause. *Roberts* does stand for that proposition: "Because denial of summary judgment is a sound indicator of probable cause, it is sensible to accept it as establishing probable cause defeating a later malicious prosecution suit. Doing so serves the policy expressed in *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863 [254 Cal.Rptr. 336, 765 P.2d 498] to discourage dubious malicious prosecution suits." (*Roberts v. Sentry Life Insurance, supra,* 76 Cal.App.4th at p. 384.)

Respondent seeks to avoid application of *Roberts*, raising two specific arguments. First, he argues that denial of his first motion for summary judgment resulted from perjured testimony filed in opposition to the motion. We have no doubt this would be a valid rejoinder to appellants' argument. The problem is that when we trace respondent's citation to the record to prove the perjury, it takes us to argument contained within points and authorities filed in opposition to a demurrer, not to evidence.

Respondent's second argument mirrors the reliance of appellants on *Roberts v. Sentry Life Insurance*: that the ultimate grant of summary judgment in his favor in the underlying action demonstrates lack of probable cause, as a matter of law. Our Supreme Court has come to a contrary conclusion: "The entry of summary judgment for the defense on an underlying claim on grounds of insufficient evidence does not establish as a matter of law that the litigant necessarily can 'state[] and substantiate[]' [citation] a subsequent malicious prosecution claim. [¶] First, contrary to Jarrow's assertion, defense summary judgment on the underlying claim does not establish lack of probable cause as a matter of law. ' "Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . ." '[Citations.] Accordingly, there is probable cause if, at the time the claim was filed, 'any reasonable attorney would have thought the claim tenable.' [Citation.] . . . [¶] Second, obtaining summary judgment for the defense on the underlying claim does not necessarily establish the malice element of a subsequent malicious prosecution claim." (*Jarrow Formulas, supra*, 31 Cal.4th at pp. 742–743.)

But the grant of summary judgment is evidence that appellants were unable to marshal necessary facts on their theory of conspiracy to support their claim against respondent. Additionally, the trial court dismissed the fourth cause of action without allowing it to be presented to the jury, which further demonstrates that appellants were unable produce evidence to demonstrate fraud on behalf of the Roberts, Slaney's alleged coconspirators. But proof of lack of probable cause requires more. As stated in *Jarrow Formulas*: "Plainly, a claim that appears 'arguably correct' or 'tenable' when filed with the court may nevertheless fail, as LaMarche's did, for reasons having to do with the sufficiency of the evidence actually adduced as the litigation unfolds. As defendants point out, every case litigated to a conclusion has a losing party, but that does not mean the losing position was not arguably meritorious when it was pled. [Citation.] And just as an action that ultimately proved nonmeritorious may have been brought with probable cause, successfully defending a lawsuit does not establish that the suit was brought without probable cause. [Citations.]" (*Jarrow Formulas, supra*, 31 Cal.4th at pp. 742–743, fn. omitted.)[7]

There is more in this case: the fact that the jury found Ranger denied coverage in bad faith and with malice. The essence of Ranger's denial of the claim and its cross-complaint for bad faith against the Roberts was that the Roberts, in connection with respondent, attempted to collect on a fraudulent

---

[7] Slaney argues on appeal that utilizing the concept of collateral estoppel based on the judgment from the underlying action should preclude appellants from contesting the issues of probable cause and malice. Given this language from *Jarrow*, we disagree.

claim. Because Ranger denied the claim based on this theory, the judgment from the underlying action is relevant to this action.

In *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps, supra,* 99 Cal.App.4th 1179, we addressed the merits of a SLAPP motion brought by attorneys being sued for malicious prosecution resulting from a copyright claim the attorneys prosecuted against Mattel. Mattel requested and obtained an award of sanctions against the attorney in the underlying action pursuant to Federal Rules of Civil Procedure, rule 11 (28 U.S.C.). The award included a finding that the action had been filed "without factual foundation." (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps, supra,* 99 Cal.App.4th at p. 1184.) In discussing the showing made by Mattel regarding the merits of the malicious prosecution action we concluded: "The findings made in connection with the rule 11 [citation] sanctions, the appropriate subject of judicial notice requested of the trial court [citation], are evidence that the underlying action was filed without probable cause." (*Id.* at p. 1191.)

Here, the judgment in the underlying action states that the fourth cause of action was "without any substantive basis in law and/or fact." This finding is not substantially different from that in *Mattel.* Given the further finding of malice, and the award of punitive damages by the jury, it is reasonable to infer that the jury concluded Ranger's theory of conspiracy to defraud between Slaney and the Roberts was itself fraudulent and prosecuted in bad faith. This, along with the ultimate grant of summary judgment in favor of respondent is sufficient to offset the first denial of the motion for summary judgment and support inferences of lack of probable cause and malice. The trial court did not err in denying the SLAPP motion.

## DISPOSITION

The order denying the SLAPP motion is affirmed. Respondent's request for sanctions is denied, but costs are awarded to respondent.

Epstein, Acting P. J., and Curry, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 12, 2004.