Filed 3/27/13  Carmel v. Pacific Med. Towers Assn. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CARMEL, LTD., | |
| Plaintiff and Respondent, | G046305 |
| v. | (Super. Ct. No. 30-2008-00108447) |
| PACIFICA MEDICAL TOWERS ASSOCIATION, INC., et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Jamoa A. Moberly, Judge.  Affirmed.

Law Offices of M. Candice Bryner and M. Candice Bryner for Defendants and Appellants.

Rogers, MacLeith & Stolp and Thomas J. Stolp for Plaintiff and Respondent.

\*          \*          \*

Defendants Pacifica Medical Tower Owner's Association (PMTOA), Mohsen Tavoussi, and Robert Bolender appeal from the trial court's postjudgment order denying their motion for attorney fees as the prevailing parties under Civil Code section 1354, subdivision (c), which provides for attorney fees "[i]n an action to enforce the governing documents" of an association, like PMTOA, organized under the Davis-Stirling Common Interest Development Act. (Civ. Code, § 1350 et seq.; further statutory references are to the Civil Code unless noted.) Defendants contend the trial court erred in finding they were not prevailing parties when plaintiff Carmel, Ltd. (Carmel), voluntarily dismissed without prejudice its declaratory judgment, breach of fiduciary duty, and fraud causes of action. Bolender also argues the trial court erred in finding his fee motion was untimely.

As we explain, however, a parallel arbitration proceeding in which Carmel obtained an order to partition by sale its ownership share of the building governed by the PMTOA mooted Carmel's declaratory judgment and breach of fiduciary duty causes of action. Simply put, partition ended Carmel's interest in the PMTOA, leaving Carmel no associational interest to assert and justifying dismissal of its lawsuit. Consequently, no party prevailed on Carmel's declaratory relief and breach of fiduciary duty claims for alleged violations of the PMTOA governing documents.

Similarly, Carmel's fraud claims did not result in a prevailing party. Indeed, as a matter of law, its fraud claims did not constitute an attempt to enforce the PMTOA governing documents. (See *Gil v. Mansano* (2004) 121 Cal.App.4th 739, 743 ["A tort claim does not enforce a contract," and therefore does not implicate attorney fee provisions triggered by enforcement actions].) Consequently, Carmel's tort claims and voluntary dismissal provided no basis to obtain attorney fees under section 1354 for

2

enforcement of an owners association agreement. We therefore affirm the trial court's ruling denying defendants' request for attorney fees.

I

FACTUAL AND PROCEDURAL BACKGROUND

Tavoussi, a principal in an entity known as Orange County Surgery Center, Inc. (OCSC), and Paul Wakim, a Carmel principal, joined together through these entities to form PT Partners, LLC (PT Partners), to purchase a majority ownership interest in a Huntington Beach office building known as Pacifica Medical Tower. The purpose of their venture was to secure office space for their respective medical practices and an income stream from third party tenants. Through PT Partners, Wakim and Tavoussi owned at least 70 percent of Pacifica Medical Tower and, through corresponding control of the building owners association, PMTOA, effectively controlled management of the building. The union, however, was not a happy one and relations between Wakim and Tavoussi eventually descended into litigation between their respective entities.

Carmel sued the defendants, including Bolender, for fraud, and added claims for declaratory relief against PMTOA and breach of fiduciary duty against Tavoussi. The parties on appeal provide no details about Bolender, nor otherwise explain his role in the dispute, but Carmel's fraud allegation in its first amended complaint alleged PMTOA, Tavoussi, OCSC, Bolender, and unknown others, "[o]n or before May 9, 2008, . . . conducted a meeting of the board of directors of Defendant PMTOA to nominate candidates for an election of a new board of directors. Defendants . . . failed to give proper notice as required by the declaration of covenants, conditions and restrictions for the Pacifica Tower Owners Association and the bylaws for Defendant PMTOA." According to Carmel's complaint, defendants "suppress[ed]" notice of the

3

meeting date to "mislead the member/owners, including Plaintiff, to believe that there were no changes to be made to the present board of directors, or that any nominating committee was being formed to create a slate of director candidates."

According to Carmel, Tavoussi used the secret meeting in collusion with the other defendants to "nominat[e] himself as the new president of the association board," with designs to "wrestle control of the building from Dr. Wakim." Carmel alleged in its fraud claim that by keeping the meeting a secret, defendants engaged in "intentional misrepresentation, deceit or concealment . . . with the intention . . . of thereby depriving Plaintiff of property or legal rights or otherwise causing injury," for which Carmel sought unspecified damages, including punitive damages for defendants' "despicable conduct." Bolender and Tavoussi demurred to the complaint, which the trial court sustained with leave to amend, and Carmel filed a second amended complaint.

Carmel dropped any mention of Bolender in its second amended complaint, but retained its fraud allegations as noted above against Tavoussi, OCSC, and PMTOA, and also reasserted its declaratory relief claim against PMTOA and its breach of fiduciary duty claim against Tavoussi. Specifically, Carmel premised its declaratory judgment action on the May 9, 2008 meeting, alleging it "was invalid for want of proper notice to the owner/members and that any actions approved or authorized at the meeting were invalid . . . ." Carmel asked the court to determine promptly whether PMTOA violated the association's notice requirements because PMTOA scheduled a meeting at which "PMTOA . . . is threatening to remove all present members of the board of directors, elect an entire[ly] new board of directors, and to amend the declaration of covenant[s], conditions and restrictions for condominium ownership of the Pacifica Medical Tower to allow for non-block voting. Such actions if taken will adversely affect Plaintiff,

4

including [by] removing certain members of the board of directors [and] creating a new board of directors populated by Defendant Mohsen Tavoussi and his family members . . . ." Carmel therefore sought declaratory relief and an injunction to invalidate Tavoussi's presidency and prevent him from "control[ling] the operation of Defendant PMTOA for defendant Tavoussi's benefit and to the detriment of the other owner/members."

Carmel similarly based its breach of fiduciary duty cause of action against Tavoussi on his alleged takeover of PMTOA at the May 2008 meeting, after which he "exercised exclusive control of the Defendant PMTOA to the exclusion of the other owner/members and Plaintiff." Specifically, Carmel asserted Tavoussi "used property and assets, including bank accounts, of Defendant PMTOA to the exclusion of the other owner/members, conducted meetings of Defendant PMTOA without notice to the other owner/members . . . and . . . entered into contracts for Defendant PMTOA without authority or providing notice to the other owner/members, and sought to exercise exclusive control of Defendant PMTOA for such Defendants' benefit."

As the litigation wound its way to a trial date set for January 2011, Wakim apparently concluded that resolving one legal skirmish with Tavoussi over proper notice would not repair their relationship and inability to work together. Carmel and OCSC therefore entered arbitration to secure an accounting of PT Partners' assets and to partition PT Partners' ownership interest in Pacifica Medical Tower. It is not clear whether the parties arbitrated their dispute under contractual terms in their PT Partners agreement or simply on their own initiative but, in any event, the trial court did not order arbitration as part of the pending lawsuit. In a June 2011 arbitration award, the arbitrator determined the amounts Carmel and OCSC each owed PT Partners for their respective

rental occupancy of portions of the building, and the arbitrator ordered PT Partners' ownership interest in the building partitioned by sale.

Meanwhile, at the January 31, 2011 trial date, Carmel requested a voluntary dismissal of its second amended complaint without prejudice, which the court clerk entered. In March 2011, defendants sought attorney fees as prevailing parties in the litigation under section 1354. Bolender argued he was a prevailing party by virtue of his successful demurrer in November 2008. Tavoussi and PMTOA argued they were prevailing parties because they achieved their litigation objectives when Carmel dismissed its lawsuit, taking nothing.

In July 2011, the trial court concluded Bolender's motion was untimely because by successfully demurring, he had been "effectively dismissed from this action" no later than December 1, 2008. The court acknowledged Carmel "conducted no discovery whatsoever" before dismissing its second amended complaint (SAC) on the trial date, but explained "[t]he timing of Plaintiff's dismissal does not, in and of itself, demonstrate that Defendants are the prevailing parties on the SAC." Rather, the trial court concluded, "practically speaking," that "no facts" demonstrated defendants prevailed on the causes of action Carmel asserted. The trial court therefore denied defendants' attorney fee request, and they now appeal.

II

DISCUSSION

A. *Standard of Review*

Relying on *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94 (*Coltrain*), in which the plaintiffs dismissed their defamation complaint when the defendants filed an

6

anti-SLAPP motion,[1] defendants suggest we must presume a plaintiff's voluntary dismissal ordinarily requires attorney fees for the defendant. (*Coltrain*, at p. 107 ["Upon the [plaintiffs]' voluntary dismissal, a presumption arose that defendants were the prevailing parties"].) Defendants argue that because Carmel neither developed any evidence through discovery, nor otherwise presented evidence its request for dismissal "was prompted by some reason other than to avoid a trial on the merits," Carmel failed to rebut the conclusion defendants prevailed on their litigation objectives.

*Coltrain* involved an attorney fee award under CCP § 425.16, subdivision (c), which authorizes attorney fees for a defendant prevailing on a special motion to strike and for a plaintiff only when the strike motion is frivolous. The *Coltrain* court stated colorfully: "Since the defendant's goal is to make the plaintiff go away with its tail between its legs, ordinarily the prevailing party will be the defendant." (*Coltrain*, *supra*, 66 Cal.App.4th at p. 107.) *Coltrain* acknowledged "[t]he plaintiff, however, may try to show it actually dismissed because it had substantially achieved its goals through a settlement or other means, because the defendant was insolvent, or for other reasons unrelated to the probability of success on the merits." (*Ibid.*)

But the *Coltrain* court noted the special interests at stake when, absent a fee award, "SLAPP plaintiffs could achieve most of their objective with little risk — by filing a SLAPP suit, forcing the defendant to incur the effort and expense of preparing a special motion to strike, then dismissing the action without prejudice. The specter of the action being refiled (at least until the statute of limitations had run) would continue to

---

[1]     A "SLAPP" action is a "strategic lawsuit against public participation" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57), and Code of Civil Procedure section 425.16 (hereafter CCP § 425.16) provides a remedy in the form of a strike motion to gain early dismissal of a SLAPP lawsuit or cause of action (see, e.g., *Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 309, fn. 1).

7

have a significant chilling effect on the defendant's exercise of its First Amendment rights.  At that point, the plaintiff would have accomplished all the wrongdoing that triggers the defendant's eligibility for attorney's fees, but the defendant would be cheated of redress." (*Coltrain*, *supra*, 66 Cal.App.4th at pp. 106-107.)

Defendants do not suggest similar constitutional interests are at stake here. Nor do they provide any authority showing a presumption in favor of the defendant following a voluntary dismissal has been adopted outside the anti-SLAPP context, and we have found none.  Nor do defendants point to any provision similar to CCP § 425.16, subdivision (b)(1), which requires the plaintiff to demonstrate a probability he or she will prevail on the underlying claims, thereby providing a basis for the trial court to determine the prevailing party (*id.*, subd. (c)).  CCP § 425.16, subdivision (c), mandates attorney fees for a defendant prevailing on a special motion to strike, while a plaintiff only may obtain fees if the motion is frivolous, which supports an implicit presumption in favor of the defendant when a voluntary dismissal is entered.  But no similar language calls for the presumption here.

To the contrary, section 1354 provides simply that the governing documents of an association organized as a common interest development equally "may be enforced by the association against an owner of a separate interest or by an owner of a separate interest against the association" and, "[i]n an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (§ 1354, subds. (b) & (c).)  We review the trial court's prevailing party and consequent attorney fees determination for abuse of discretion.  (*Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574 (*Heather Farms*).)

8

Conceding that an order granting or denying an attorney fees motion "is generally reviewed under an abuse of discretion standard," defendants nevertheless invoke the principle that the """"determination of whether the criteria for an award of attorney's fees and costs have been met is a question of law."""" (*Salaway v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 669.)  The principle does not aid them.  True, as a matter of law, the trial court here could not award attorney fees to either party if the lawsuit did not constitute "an action to enforce the governing documents," as required by section 1354, subdivision (c).

Notably, successful tort actions do not enforce contractual rights, and therefore "[w]here a contract authorizes an award of attorney fees in an action to enforce any provision of the contract, tort claims are not covered." (*Gil v. Mansano*, *supra*, 121 Cal.App.4th at p. 743.)  Similarly, the trial court reasonably could have concluded Carmel's tort claims would not trigger attorney fees for the party prevailing on those claims because their predominant purpose was not to enforce the association's governing documents, but to remedy Carmel's alleged fraud injuries.  In particular, given that Wakim, Tavoussi, and their respective entities had partitioned their interests and abandoned their joint enterprise in building ownership and management under PMTOA association rules, Carmel's tort claims had virtually nothing to do with ensuring proper application of the association's governing documents going forward.  Thus, because Carmel retained the option after its voluntary dismissal without prejudice to refile its fraud claims, which would not provide a basis for attorney fees, the trial court could conclude no attorney fees were warranted.  In any event, ample authority justified the trial court's denial of fees, as we discuss below.

B.    *The Trial Court Did Not Abuse Its Discretion by Denying Attorney Fees*

*Heather Farms* is instructive.  The court explained that a defendant dismissed without prejudice in a section 1354 enforcement action "is not, ipso facto, [the] prevailing party" and, indeed, there may be no prevailing party.  (*Heather Farms*, *supra*, 21 Cal.App.4th at pp. 1570-1571, 1573.)  There, a homeowners' association sued a unit owner, Robinson, to enforce the covenants, codes, and restrictions of a residential development.  The complaint "spawned a complex series of cross-complaints and subsidiary actions" involving numerous parties, which the trial court assigned to a second judge for a settlement conference.  (*Heather Farms*, *supra*, 21 Cal.App.4th at p. 1570.)  All the parties *except* Robinson agreed to settle their differences, but "the settlement nonetheless required the association to dismiss its suit against Robinson 'without prejudice.'"  (*Ibid.*)

The judge who negotiated the settlement in *Heather Farms* found there were no prevailing parties:  "'This dismissal is part of an overall complex piece of litigation . . . that's been resolved by a negotiated settlement.  There are no winners.  There are no favorable parties in this case.'"  (*Heather Farms*, *supra*, 21 Cal.App.4th at p. 1571.)  Nevertheless, Robinson sought to recover his attorney fees pursuant to section 1354, "maintain[ing] that since he had received a dismissal, he was the 'prevailing party'. . . ."  (*Heather Farms*, at p. 1571.)  The trial "court agreed with the settlement judge and concluded there was no 'prevailing party' . . . within the meaning of section 1354."  (*Ibid.*)

The appellate court upheld the trial court's ruling, explaining that to determine the "prevailing party" within the meaning of section 1354, the trial court analyzes "which party . . . prevailed on a practical level."  (*Heather Farms*, *supra*,

21 Cal.App.4th at p. 1574.)  Nothing in the record suggested the trial court abused its discretion.  Rather, the trial court reasonably could conclude there was no prevailing party because the homeowners' association dismissed its action against Robinson "as part of a global settlement agreement, not because he succeeded on some procedural issue or otherwise received what he wanted."  (*Ibid*.)

The court in *Heather Farms* looked to *Donald v. Cafe Royale, Inc.* (1990) 218 Cal.App.3d 168 (*Donald*), which we also find instructive.  There, "the plaintiff, a physically disabled man, filed suit against a restaurant alleging it had violated the Civil Code by failing to provide him adequate access.  Among other things, the plaintiff sought an injunction under section 55 barring the restaurant from continuing its violation in the future.  While the suit was pending, the restaurant became insolvent and closed.  The trial court ruled the restaurant was the prevailing party on the injunction and awarded it attorney fees.  The plaintiff appealed the award and the appellate court reversed:  'In the instant case [the plaintiff] filed his section 55 cause of action in order to enjoin [the restaurant's] operation in violation of the pertinent statutes and administrative code provisions.  The cessation of . . . operation of the restaurant achieved that result.  Under these circumstances, it was an abuse of discretion for the court to determine that by going out of business and rendering the issue moot, [the restaurant] "prevailed" for purposes of attorney fees.  Neither party prevailed for purposes of an award of attorney fees on the cause of action for injunctive relief.'"  (*Heather Farms*, *supra*, 21 Cal.App.4th at p. 1573.)

Similarly here, the trial court reasonably could conclude neither party prevailed, and defendants therefore were not entitled to attorney fees.  As a practical matter, the arbitrator's partition order directing Carmel and OCSC to sell PT Partners'

11

majority stake in the building, which appears to have been its only asset, put PT Partners — like the restaurant in *Donald* — "out of business" as a going concern and rendered moot its internecine conflicts over building management. Neither Carmel, nor Tavoussi appear to have had any quarrel with the arbitrator's ruling, but instead fully assented to ending their association, which made their squabbles over notice and governance academic. Having sold their interest, neither Wakim nor Tavoussi would be owners or board members or otherwise exercise control over PMTOA. Moreover, there is no indication the notice issue involved an important or disputed matter of association policy or practice that would be of interest to the minority-stake PMTOA members. Rather, the meeting on May, 8, 2008, and events leading up to it appear to have been a singular episode of marginal importance once the quarreling heavyweights separated outside the litigation.

In court, no one prevailed on the issue of injunctive relief, which the trial court did not begin to resolve, and nothing suggests any remaining PMTOA member could point to the dismissal as vindicating his or her position on a matter of association governance, which Tavoussi and Wakim formerly controlled through PT Partners. As noted, the parties give no hint who Bolender is or any remaining interests he might have and therefore, as in *Heather Farms*, "the record before us is inadequate to seriously challenge the trial court's rulings." (*Heather Farms*, *supra*, 21 Cal.App.4th at p. 1574.)

Defendants rely on *Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146 (*Salehi*) because it distinguished *Heather Farms*, but the distinction does not aid defendants. In *Salehi*, a plaintiff condominium owner who sued her homeowners' association (Association) in propria persona dismissed eight of her ten causes of action on the eve of trial "[b]ased on faulty reasoning." (*Salehi*, at p. 1150.)

12

Instead of seeking a continuance, she dismissed the causes of action because her expert witness suffered a heart condition requiring surgery. The Association filed a motion for a quarter million dollars in attorney fees related to the dismissed causes of action, which the trial court denied, citing *Heather Farms* and concluding the Association had not "'prevailed on a practical level'" because "'the dismissal[s] seem[] to be due more to [Salehi's] inexperience and poor decisions than any implied concession to the merits of [Association's] case.'" (*Salehi*, at p. 1152, original brackets.)

The appellate court reversed, concluding: "*Heather Farms* is readily distinguishable. There, the dismissal was mandated by the terms of a global settlement. Here, the dismissals were based on Salehi's faulty reasoning. The expert's unavailability because of illness constituted good cause for a continuance. Salehi recognized that she had good cause for a continuance when, three days after the dismissals, she requested a continuance on the remaining fourth and sixth causes of action because of the expert's illness. The trial court confirmed the showing of good cause by continuing the trial for four months . . . . [¶] . . . [¶] Instead of moving for a continuance on all of the causes of action, as a competent attorney would have done, Salehi dismissed eight of them." (*Salehi*, *supra*, 200 Cal.App.4th at p. 1155.)

The *Salehi* court concluded the trial court abused its discretion by denying attorney fees. "We are hard pressed to explain how it reached its conclusion or how the holding of *Heather Farms* aids Salehi. The record does not suggest that Salehi would have prevailed on the merits. It does not appear that she was ready to go forward procedurally and prove the case substantively. To say that she was, somehow, the prevailing party on a 'practical level' or that she realized her 'litigation objectives' is to do violence to these legal phrases of art. Association was ready to defend on the merits

13

and cannot be faulted because Salehi dismissed these causes of action." (*Salehi*, *supra*, 200 Cal.App.4th at p. 1155.)

*Salehi* appears to presume that because the trial court there denied the defendant's attorney fee request, the lower court must have concluded the plaintiff was the prevailing party. To the contrary, however, there may be no prevailing party. (*Heather Farms*, *supra*, 21 Cal.App.4th at p. 1573.) In any event, *Salehi* does not aid defendants because nothing in the record here suggests Carmel dismissed its complaint because of a tactical or procedural error that prevented resolution of the issues on the merits. *Heather Farms* acknowledged case law holding a pragmatic inquiry may show that a fatal procedural error furnishes a basis for attorney fees, as under the private attorney general statute (Code Civ. Proc., § 1021.5), where "a defendant, who obtains a dismissal with prejudice because the plaintiff fails to timely serve the complaint, has . . . prevail[ed] and is entitled to attorney fees." (*Heather Farms*, at p. 1573, citing *Winick Corp. v. Safeco Insurance Co.* (1986) 187 Cal.App.3d 1502 (*Winick*).)

Unlike *Salehi* or *Winick*, this case does not involve such an error, but more closely resembles *Heather Farms* and *Donald* where a circumstance outside the litigation essentially mooted the underlying controversy, and therefore mooted the prevailing party question. As discussed, nothing in the record suggests which party, if any, would have been vindicated had the litigation gone forward. In *Salehi*, to the contrary, not only did the plaintiff make a unilateral and fatal misstep that prevented resolution on the merits, but the Association also pointed to a case decided in its favor on the eve of trial that the Association suggested actually prompted the plaintiff's ill-conceived dismissal. (*Salehi*, *supra*, 200 Cal.App.4th at pp. 1151-1152.) Here in contrast, and unlike in the anti-SLAPP context where the parties must brief for the trial court the probability of the

14

plaintiff prevailing on the merits, "we have no way of measuring the truth of the allegations which were made," as *Heather Farms* observed.  (*Heather Farms*, *supra*, 21 Cal.App.4th at p. 1574.)  For all the foregoing reasons, we cannot say the trial court abused its discretion in denying attorney fees, and we therefore affirm the trial court's order.

## III

## DISPOSITION

The trial court's order denying attorney fees is affirmed.  Respondent is entitled to its costs on appeal.

ARONSON, J.

WE CONCUR:

MOORE, ACTING P. J.

FYBEL, J.

15