Filed 5/17/16  El Monte Rents v. Aequitas Law Group CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| EL MONTE RENTS, INC., | B256665 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC526979) |
| v. | |
| AEQUITAS LAW GROUP et al., | |
| Defendants and Appellants; | |
| CANLAS LAW GROUP et al., | |
| Defendants and Respondents. | |
| | |
| EL MONTE RENTS, INC., | B262566 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC526979) |
| v. | |
| CANLAS LAW GROUP et al., | |
| Defendants and Respondents. | |

APPEALS from orders of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Law Office of Jeff Augustini, Jeff Augustini; Law Office of Peter Sloan and Peter Sloan for Plaintiff and Appellant.

Robie & Matthai, Edith R. Matthai, Klye Kveton and Natalie A. Kouyoumdjian for Defendants and Appellants.

Nemecek & Cole, Michael McCarthy and Mark Schaeffer for Defendants and Respondents.

———————————————————

**INTRODUCTION**

Gustavo Villalpondo and Jessie Yanez filed class and collective actions against their employer, El Monte Rents, Inc.  Villalpando was represented by attorneys in two law firms, Aequitas Law Group and Canlas Law Group.  Yanez was represented by attorneys in the Aequitas firm only.  The attorneys at Aequitas thought they had good claims, and wrote several letters to the attorneys for El Monte saying so.  The attorneys for El Monte thought the claims were meritless, and wrote several letters not only saying so, but also threatening to sue for malicious prosecution.  It turned out that the attorneys for El Monte had the better of the argument:  El Monte ultimately prevailed in the actions.

The attorneys for El Monte subsequently followed through on their threats and filed a malicious prosecution action against Villalpondo, Yanez, the Aequitas firm and several of its attorneys, Ronald H. Bae, Joseph Cho, Travis Hodgkins, and Autumn Love (collectively Aequitas), and the Canlas firm and its principal, Christopher J. Canlas (collectively Canlas).  Aequitas and Canlas filed separate special motions to strike the complaint under Code of Civil Procedure section 425.16.  The trial court granted the motion by Canlas and awarded Canlas $48,602 in attorneys' fees, and denied the motion by Aequitas.

2

El Monte appeals the order granting Canlas's special motion to strike, arguing that the trial court erred in concluding that El Monte failed to satisfy its burden to show a probability of prevailing on the element of lack of probable cause. El Monte also challenges the amount of attorneys' fees the court awarded to Canlas. Aequitas appeals the order denying its special motion to strike, arguing that the trial court erred in concluding that El Monte satisfied its burden to show a probability of prevailing on the elements of lack of probable cause and malice. We affirm all of the trial court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *El Monte's Timekeeping and Vacation Accrual Policies*

El Monte rents and sells recreational vehicles. The company instituted a policy prohibiting employees from clocking in for work more than seven minutes before the beginning of their shift or clocking out more than seven minutes after the end of their shift, unless the company had authorized overtime. El Monte also rounded its employees' time entries to the nearest quarter hour. El Monte informed its employees that it would consider anyone who clocked in after the beginning of his or her shift tardy, and would consider anyone who clocked out before the end of his or her shift as having left early. El Monte stated that the purpose of this policy was to establish consistent timekeeping procedures and prevent unauthorized overtime.

El Monte also adopted a policy limiting the amount of vacation time its employees could accrue depending on their years of service. Employees with one year of service could accrue no more than 40 vacation hours, and employees with two to nine years of service could accrue no more than 96 vacation hours.

B.    *The Employment Litigation*

1.    *The Villalpando State Court Class Action*

On August 23, 2010 Villalpando, represented by Aequitas and Canlas, filed a class action in state court against El Monte alleging various wage and hour violations and unfair competition under Business & Professions Code section 17200 (*Villalpando v. El Monte Rents, Inc.* (Super. Ct. L.A. County, No. BC444211) (the *Villalpando* action)). On January 11, 2013 the trial court granted El Monte's motion for judgment on the pleadings on some of the causes of action in the complaint and denied the motion on others. On April 2, 2013 the trial court denied the plaintiffs' motion for class certification of the remaining claims. The *Villalpando* action was still pending in state court when El Monte filed this action, and therefore it is not part of El Monte's malicious prosecution claim.

2.    *The Federal Court Collective Action and the Settlement Demand*

On August 12, 2011 Villalpando, represented by Aequitas, filed a collective action under the Fair Labor Standards Act (FLSA) (29 U.S.C. § 201 et seq.) in federal district court alleging that El Monte's policy of rounding employee time entries to the nearest quarter hour, together with its tardiness policy, resulted in the systematic undercompensation of employees (*Villalpando v. El Monte Rents, Inc.* (C.D. Cal., No. CV11-6652) (the federal action)).[1] The complaint indicated that Canlas was "[a]dditional counsel" for the plaintiffs.

---

[1]    A representative action under FLSA differs from a class action in that absent employees must affirmatively opt in to become parties. Courts sometimes refer to such actions as "collective actions." (*Haro v. City of Rosemead* (2009) 174 Cal.App.4th 1067, 1071-1072.)

4

On May 7, 2012 Bae, one of the attorneys at Aequitas working on the case, sent a letter to the attorneys for El Monte requesting a settlement offer from El Monte by May 9, 2012, and threatening to file two additional class actions challenging El Monte's vacation accrual policy, with class representatives other than Villalpando, if El Monte did not settle the Villalpando action and the federal action. Bae stated in his letter, "If [El Monte] settles these cases now, it will be obtaining class-wide releases on all wage and hour claims from August 2006, thereby immunizing it from other lawsuits." Bae later identified Yanez as the named plaintiff in a new class action Aequitas intended to file alleging that El Monte's vacation policy imposed an unreasonable limit on the accrual of vacation time. On June 6, 2012 Jeff Augustini, an attorney for El Monte, responded to Bae in an email stating that Yanez had never reached the vacation accrual limit and therefore had suffered no damages as a result of the challenged policy. Augustini stated that El Monte had already produced Yanez's payroll records showing that there was no factual basis for such a claim by Yanez and that filing such an action would be malicious prosecution.[2]

El Monte moved for summary judgment in the federal action, arguing that the statute of limitations barred the claims of numerous plaintiffs, the company's rounding policy was neutral and complied with federal law, there was no evidence that El Monte had failed to pay any compensation due, and any nonpayment was de minimis. The plaintiffs opposed the motion, arguing, among other things, that El Monte's rounding policy together with its tardiness policy consistently undercompensated employees and that the shortfall was not de minimis. The plaintiffs argued that the court should consider each biweekly pay period in determining whether El Monte underpaid its employees, and that the court should not offset underpayments in some pay periods against overpayments

---

[2]    This description of the written exchanges between Bae and Augustini is sanitized. The actual language of their correspondence displays a level of incivility and unprofessionalism that most members of the California Bar have abandoned as unproductive and inconsistent with their oaths as attorneys.

in other pay periods. The parties refer to this method of calculating potential undercompensation as a per-pay-period calculation.

On November 9, 2012 the district court granted El Monte's motion for summary judgment. The court ruled that the statute of limitations barred the claims of 29 plaintiffs. The court stated that a rounding policy complies with FLSA if, on average, the policy does not result in underpayment, but a rounding policy that systematically undercompensates employees is unlawful. The court ruled that the plaintiffs had failed to present any evidence that El Monte required them to arrive at the office before their shifts began or to stay at the office after their shifts ended, and had presented no evidence that they engaged in work for which El Monte did not compensate them. The court noted that the plaintiffs had presented evidence that El Monte had informally reprimanded employees for tardiness, but stated that there was no evidence El Monte had formally disciplined employees. The court rejected the plaintiffs' argument that it should consider the impact of El Monte's rounding and tardiness policies per pay period rather than over a longer period of time, ruling that the plaintiffs had failed to cite any authority supporting their argument and had failed to respond to El Monte's evidence that, over longer periods of time, the impact was minimal.

### 3.     *The Yanez State Court Class Action*

On July 23, 2012 Yanez, represented by Aequitas, filed a second class action against El Monte in state court, alleging causes of action for (1) failure to pay vacation wages, (2) failure to timely pay wages due upon termination of employment, and (3) unfair competition (*Yanez v. El Monte Rents, Inc.* (Super. Ct. L.A. County, No. BC488743) (the *Yanez* action)). The claims in the *Yanez* action all related to El Monte's vacation policy, which the plaintiffs argued imposed an unreasonable limit on the accrual of vacation time.

El Monte demurred to the complaint, arguing that its vacation policy was "a 'no additional accrual policy' that is permissible *as a matter of law*." El Monte argued that the law did not require its accrual limit had to be "reasonable." El Monte also argued that

6

Yanez had not alleged the company had required him to forfeit any accrued vacation time and, as a former employee, Yanez had no standing to sue El Monte regarding its vacation policy. The plaintiffs argued in opposition to the demurrer that opinion letters by the Division of Labor Standards Enforcement (DLSE), which were persuasive authority, stated that limits on vacation accrual had to be reasonable, and that El Monte's limit on vacation accrual was unreasonable. The plaintiffs also argued that Yanez had properly alleged that he suffered an injury as a result of the vacation policy, and that he had standing to seek injunctive relief. After Aequitas filed opposition to El Monte's demurrer, however, Yanez testified in his deposition that the vacation accrual limit never affected him because he frequently took vacation days, never reached the accrual limit, and was not even aware of the limit during the time he worked for El Monte.

On January 9, 2013 the trial court sustained the demurrer without leave to amend. The court stated in its tentative ruling that El Monte's vacation accrual policy was lawful, did not impose a forfeiture, and comported with "principles of equity and fairness" (quoting Lab. Code, § 227.3). The court also stated that the DLSE opinion letters had no persuasive value. The trial court's order sustaining the demurrer without leave to amend did not adopt or refer to the tentative ruling. On January 30, 2013 the trial court entered a judgment of dismissal.

C.      *El Monte's Malicious Prosecution Action*

1.      *The Complaint*

On November 7, 2013 El Monte filed this action for malicious prosecution against Villalpando, Yanez, Aequitas, and Canlas, alleging that they had maliciously prosecuted both the federal action and the *Yanez* action. El Monte alleged that Aequitas had filed both actions and that Canlas was co-counsel for the plaintiffs in the federal action. El Monte alleged that the defendants' unsuccessful prosecution of the *Villalpando* state court class action further evidenced the defendants' malice and improper motives.

7

### 2. *The Special Motions To Strike*

Aequitas filed a special motion to strike El Monte's malicious prosecution complaint. Aequitas argued that the malicious prosecution complaint arose from petitioning activity and that El Monte could not establish a probability of prevailing on the element of lack of probable cause because there was probable cause to prosecute both the federal action and the *Yanez* action.

Canlas also filed a special motion to strike, and joined in Aequitas's motion. Canlas argued that the malicious prosecution complaint arose from petitioning activity and that El Monte could not establish a probability of prevailing on the elements of lack of probable cause and malice. Christopher Canlas stated in his declaration that he had referred Villalpando to Aequitas, but he did not prepare the complaint in the federal action, did not participate in litigating that case, and attended a mediation only as an observer. He also stated that his firm never represented Yanez, never participated in litigating the *Yanez* action, and had no feelings of hatred or ill will toward El Monte or any of its agents, representatives, or attorneys.

El Monte argued in opposition to the special motions to strike that the federal action and the *Yanez* action were factually and legally untenable. El Monte argued that in granting summary judgment the district court had ruled the plaintiffs failed to present any evidence supporting their rounding claim. El Monte also argued that the plaintiffs' claims in the *Yanez* action were legally untenable because the law was settled that rounding was improper only if it resulted in consistent underpayment over a period of time, and that the plaintiffs had not cited any legal authority for their argument that underpayment should be measured on a per-pay-period basis. Regarding the *Yanez* action, El Monte argued that Aequitas knew there was no factual support for Yanez's claims because Augustini had informed Bae that Yanez had never reached the vacation accrual limit. El Monte argued that the *Yanez* action was legally untenable because the court in *Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595 (*Boothby*) held that policies limiting the accrual of vacation time were permissible, and that DLSE opinion letters were not persuasive authority for the proposition that a limit on vacation accrual

8

had to be reasonable.  Finally, El Monte argued that Canlas was involved in the federal litigation and had acted with malice because Canlas had agreed to serve as co-counsel for the plaintiffs in the federal action without investigating the factual or legal merits of the claim.

### 3.     *The Trial Court Grants Canlas's Special Motion To Strike*

The trial court granted Canlas's special motion to strike.  The court ruled that, although El Monte had shown it had obtained a favorable termination on the merits of both actions, El Monte had failed to establish a probability of prevailing on the element of lack of probable cause as to the federal action because El Monte had failed to show that the federal action was legally or factually untenable.

Regarding the *Yanez* action, the trial court ruled that the plaintiffs' claim was legally tenable because it was based on DLSE opinion letters and because there was no authority stating that a vacation accrual limit does not have to be reasonable.  The court stated, however, that the evidence showed that Yanez had never reached the accrual limit and therefore had suffered no injury.  The court rejected the argument that the plaintiffs could substitute another class representative, noting that Aequitas had not identified any potential substitute class representative.  The trial court also found that the facts that Bae had threatened to file, and then had filed, the *Yanez* action without probable cause in an effort to force a settlement of the federal action was evidence of malice.

Nevertheless, the court ruled that El Monte had failed to controvert Canlas's evidence that Canlas had never represented Yanez and had never participated in the decision to file and maintain that action.  Based on El Monte's failure to show that the federal action was legally or factually untenable, and the absence of any evidence that Canlas had participated in prosecuting the *Yanez* action, the court concluded that El

9

Monte had failed to show a probability of prevailing on its malicious prosecution claim against Canlas. El Monte filed a timely notice of appeal.[3]

4. *The Trial Court Denies Aequitas's Special Motion To Strike*

After ordering further briefing, the trial court denied Aequitas's special motion to strike. The court noted it had previously determined El Monte had failed to show that the federal action was legally or factually untenable or that the *Yanez* action was legally untenable, and El Monte had shown a probability of prevailing on the elements of favorable termination and malice.[4] The remaining issue in Aequitas's motion therefore was whether the *Yanez* action was factually tenable.

The trial court found the evidence showed that, at the time of the filing the *Yanez* complaint, Aequitas knew that Yanez had not suffered an injury as a result of the vacation accrual policy, as required to maintain an action under the unfair competition law (Bus. & Prof. Code, § 17204). The court also found that Aequitas knew that Yanez was not a suitable class representative. The court stated, "It is one thing to allow class action counsel to search for a new class representative when, based on facts unknown to them at the time of filing, the class representative proves to be unsuitable because of a conflict or other disqualifying characteristic. However, that does not support a finding that an action is factually tenable when counsel knows before filing that the class representative has not been harmed by the policy challenged in the pleading and may not maintain the action." The court concluded that the *Yanez* action was factually untenable

---

[3]    An order granting or denying a special motion to strike is appealable. (Code Civ. Proc., §§ 425.16, subd. (i), 904.1, subd. (a)(13).)

[4]    The court also rejected Aequitas's argument that there was no evidence the other attorneys at Aequitas who worked with Bae on the El Monte litigation, Hodgkins and Love, had acted with malice. The court found that the names of both attorneys appeared on the complaint in the *Yanez* action, and there was evidence that both attorneys had actively participated in litigating both the federal action and the *Yanez* action.

10

and that El Monte therefore had shown a probability of prevailing on its malicious prosecution claim against Aequitas. Aequitas filed a timely notice of appeal.

5. *The Trial Court Grants Canlas's Motion for Attorneys' Fees*

Having prevailed on its special motion to strike, Canlas filed a motion for attorneys' fees under Code of Civil Procedure section 425.16, subdivision (c), seeking $50,604, which Canlas subsequently reduced to $48,602. El Monte argued in opposition to the motion for attorneys' fees that the amount Canlas had requested was excessive and included work that was not reasonably necessary. El Monte filed a declaration by Augustini in support of its opposition. After allowing further briefing on the reasonableness of the hourly rates, the court granted the motion and awarded Canlas $48,602 in attorneys' fees. El Monte filed a timely notice of appeal.

**DISCUSSION**

A. *Code of Civil Procedure Section 425.16*

"Section 425.16, subdivision (b)(1), provides: 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' The analysis of an anti-SLAPP motion thus involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.] We review an order granting or denying a

11

motion to strike under section 425.16 de novo." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820 (*Oasis West*); see *Nunez v. Pennisi* (2015) 241 Cal.App.4th 861, 871-872 (*Nunez*).)

A malicious prosecution cause of action arises from protected activity under Code of Civil Procedure section 425.16 and therefore satisfies the first prong. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*); see *Pasternack v. McCullough* (2015) 235 Cal.App.4th 1347, 1355 ["[a] complaint for malicious prosecution is necessarily based on protected speech and petitioning activity"].) The burden therefore shifted to El Monte to demonstrate a probability of prevailing on its claim. (See *Soukup*, at p. 291; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 673 (*Paulus*).)

"To satisfy the second prong, 'a plaintiff responding to an anti-SLAPP motion must "'state[ ] and substantiate[ ] a legally sufficient claim.'" [Citations.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."' [Citation.] 'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based."'" (*Oasis West*, *supra*, 51 Cal.4th at p. 820.) Although "'the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'" (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 20; accord, *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 962-963.)

B.      *The Law of Malicious Prosecution*

To prevail on a malicious prosecution claim the plaintiff must show (1) the defendant initiated or continued to prosecute a prior action against the plaintiff resulting in a termination favorable to the plaintiff; (2) the defendant prosecuted the action without probable cause; and (3) the defendant prosecuted the action with malice. (*Siebel v.*

12

*Mittlesteadt* (2007) 41 Cal.4th 735, 740 (*Siebel*); see *S.A. v. Maiden* (2014) 229 Cal.App.4th 27, 36.) "[M]alicious prosecution is a 'disfavored action.' [Citation.] '[T]he elements of [malicious prosecution] have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim.'" (*Jay v. Mahaffrey* (2013) 218 Cal.App.4th 1522, 1539 (*Jay*).)

"'Favorable termination "is an essential element of the tort of malicious prosecution, and it is strictly enforced."'" (*Pasternack v. McCullough*, *supra*, 235 Cal.App.4th at p. 1355.) "To determine whether a party has received a favorable termination, we consider '"the judgment as a whole in the prior action. . . ." [Citation.]' [Citation.] Victory following a trial on the merits is not required. Rather, '"the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." [Citation.]'" (*Siebel*, *supra*, 41 Cal.4th at p. 741.)

The probable cause element of a malicious prosecution action "'is a low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely unlikely to succeed.'" (*Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1449.) "'"Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . ."'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 742 (*Jarrow*).) "[T]he court 'must properly take into account the evolutionary potential of legal principles' and determine, in light of the facts known to counsel, 'whether any reasonable attorney would have thought the claim tenable.'" (*Silas v. Arden* (2012) 213 Cal.App.4th 75, 90.) Thus, "[p]robable cause to bring an action exists where the suit is '*arguably tenable*, i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable.' [Citation.] 'This rather lenient standard for bringing a civil action reflects "the important public policy of avoiding the chilling of novel or debatable legal claims."' [Citation.] In view of that policy, '[o]nly those actions that "'any reasonable attorney would agree [are] totally and completely without merit'" may form the basis for a malicious prosecution suit.'" (*Nunez*, *supra*, 241 Cal.App.4th at p. 875.) In determining whether an action was

arguably tenable the court must construe the complaint in a light most favorable to the malicious prosecution defendant.  (*Yee v. Cheung* (2013) 220 Cal.App.4th 184, 200; *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 165.)

"'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.'  [Citation.]  'In a situation of complete absence of supporting evidence, it cannot be adjudged reasonable to prosecute a claim.'  [Citation.]  Probable cause, moreover, must exist for every cause of action advanced in the underlying action.  '[A]n action for malicious prosecution lies when but one of alternate theories of recovery is maliciously asserted.'"  (*Soukup*, *supra*, 39 Cal.4th at p. 292; see *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1106 (*Cole*) ["[p]robable cause exists when a lawsuit is based on facts reasonably believed to be true, and all asserted theories are legally tenable under the known facts"]; *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 222 (*Daniels*) ["'"'probable cause is lacking 'when a prospective plaintiff and counsel do not have evidence sufficient to uphold a favorable judgment or information affording an inference that such evidence can be obtained for trial'"'"].)  The existence of probable cause is a legal question, while a controversy regarding what facts the defendant knew at the time of the prior action is a question of fact for the trier of fact.  (*Lanz v. Goldstone* (2015) 243 Cal.App.4th 441, 462 (*Lanz*); *Daniels*, at p. 222.)

Malice refers to the defendant's subjective intent or purpose in prosecuting the prior action.  (*Soukup*, *supra*, 39 Cal.4th at p. 292; *Jay*, *supra*, 218 Cal.App.4th at p. 1543.)  "Malice 'may range anywhere from open hostility to indifference.'"  (*Soukup*, at p. 292.)  "'[T]he malice required in an action for malicious prosecution is not limited to actual hostility or ill will toward plaintiff but exists when the proceedings are instituted primarily for an improper purpose.'"  (*Ibid.*; accord, *Lanz*, *supra*, 243 Cal.App.4th at pp. 466-467.)  "Because direct evidence of malice is rarely available, 'malice is usually proven by circumstantial evidence and inferences drawn from the evidence.'"  (*Jay*, at p. 1543.)

14

Lack of probable cause alone is insufficient to support an inference of malice. (See *Jarrow*, *supra*, 31 Cal.4th at p. 743 ["'[m]erely because the prior action lacked legal tenability, as measured objectively . . . *without more*, would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind'"]; *Jay*, *supra*, 218 Cal.App.4th at p. 1543 ["lack of probable cause is one factor in determining the presence of malice, but alone it is insufficient"].) Instead, some other evidence is needed to prove malice, such as evidence that the defendant knew or believed a cause of action had no merit (see *Jay*, at p. 1543; *Daniels*, *supra*, 182 Cal.App.4th at p. 226; *Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 634 (*Swat-Fame*), disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7), was indifferent to the merits of the action (see *Lanz*, *supra*, 243 Cal.App.4th at p. 468; *Cole*, *supra*, 206 Cal.App.4th at p. 1120; *Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1409 (*Sycamore*)), or prosecuted a claim for the purpose of forcing a settlement unrelated to the merits of the claim (see *Jay*, at p. 1543; *Cole*, at p. 1114).

### C. *The Law Governing Time Rounding and Vacation Accrual*

#### 1. *Time Rounding*

Federal regulations allow an employer to round employees' work starting and stopping times to the nearest quarter hour, provided that the practice "is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." (29 C.F.R. § 785.48(b).) "As long interpreted by the federal courts, this 'regulation permits employers to use a rounding policy for recording and compensating employee time as long as the employer's rounding policy does not "consistently result[ ] in a failure to pay employees for time worked."' [Citation.] '[A]n employer's rounding practices comply with [the Department of Labor rounding regulation] if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment.' [Citations.] On the other

hand, an employer's rounding policy violates the [Department of Labor] rounding regulation if it 'systematically undercompensate[s] employees' [citation], such as where the defendant's rounding policy 'encompasses only rounding down.'" (*See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 901-902 (*See's*).)

### 2. *Vacation Accrual*

"'It is established that vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed. [Citations.]' [Citation.] 'The right to a paid vacation, when offered in an employer's policy or contract of employment, constitutes deferred wages for services rendered.' [Citation.] Once vested, paid vacation time cannot be forfeited. (Lab.Code, § 227.3.)"[5] (*In re Marriage of Moore* (2014) 226 Cal.App.4th 92, 102.) "[V]acation pay is a type of wages or deferred compensation for services performed that vests throughout the course of employment," and "an employer would violate the statutory rule against forfeiture of vested vacation time in Labor Code section 227.3 if it adopted a policy providing that vacation time is forfeited when an employee terminates his or her employment before completing a full year of employment." (*Rhea v. General Atomics* (2014) 227 Cal.App.4th 1560, 1570-1571, fn. omitted.) Labor Code section 227.3, however, does not prohibit a "no additional accrual" policy that prevents the accrual of additional paid vacation time in excess of a specified limit. (*Bell v. H.F. Cox, Inc.* (2012) 209 Cal.App.4th 62, 75; accord, *Boothby*, *supra*, 6 Cal.App.4th at pp. 1601-1602; see *Owen v. Macy's, Inc.* (2009) 175 Cal.App.4th 462,

---

5     Labor Code section 227.3 states: "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness."

470 ["courts have approved employer vacation policies that warn employees, in advance, that they will cease to accrue vacation time accumulated in excess of an announced limit"].)

In *Boothby*, *supra*, 6 Cal.App.4th 1595, the court distinguished between a policy that imposes a forfeiture of vested vacation benefits if not used within a certain period of time (a "'use it or lose it'" policy), which is impermissible, and a policy that prevents an employee from earning vacation over a specified limit (a "'no additional accrual'" policy), which is permissible. (*Id.* at p. 1601.) The court in *Boothby* stated that a "no additional accrual" policy is permissible because it does not impose a forfeiture of vested vacation. (*Id.* at p. 1602.) Because the record in *Boothby* did not include the details of the employer's vacation policy, the court did not determine whether the policy was "a valid 'no additional accrual' policy." (*Id.* at p. 1603.) The court in *Boothby* also did not address the issue whether a vacation accrual limit must be "reasonable."

D.  *El Monte Failed To Establish a Probability of Prevailing on the Element of Lack of Probable Cause for the Federal Action*

1.  *The Claims in the Federal Action Were Legally Tenable*

El Monte argues the trial court erred in concluding that the rounding claim in the federal action was legally tenable without making any finding on the reasonableness of the plaintiffs' legal theory. El Monte misconstrues the parties' burdens on the special motions to strike. After Aequitas and Canlas had satisfied their burden of showing that El Monte's malicious prosecution complaint arose from protected activity, El Monte had the burden to establish a probability of prevailing on its claim, including on the element of lack of probable cause, which meant that it had the burden of establishing that the rounding claim was legally or factually untenable. (See *Soukup*, *supra*, 39 Cal.4th at p. 291; *Paulus*, *supra*, 139 Cal.App.4th at p. 673.).

17

El Monte argues the rounding claim was legally untenable because longstanding law had established that rounding was permissible as long as it did not result in consistently undercompensating employees "over time."  According to El Monte, a court cannot "determine whether employees 'on average' are 'consistently' undercompensated 'over time' by looking at just one or a few selective pay periods, and/or by relying solely on pay periods that support under-compensation while intentionally disregarding those that show over-compensation" (emphasis omitted).  El Monte has not shown, however, that, at the time Aequitas and Canlas prosecuted the federal action, courts had established that a rounding policy that sometimes results in undercompensation and sometimes results in overcompensation when measured per pay period is permissible.  In other words, at the time of the federal action, the law was not clear that a court must offset overcompensation in one pay period against undercompensation in another pay period in determining whether a rounding policy consistently undercompensates employees.  Thus, the plaintiffs' theory in the federal action based on per-pay-period undercompensation was legally tenable.

The case on which El Monte principally relies, *See's*, *supra*, 210 Cal.App.4th 889, was a class action alleging failure to pay overtime and other wages.  The plaintiff challenged the employer's rounding policy, in which the employer rounded employee time entries to the nearest one-tenth of an hour.  Under a grace period policy the employer allowed employees to clock in up to 10 minutes before their work shift and clock out up to 10 minutes after their work shift, as long as they performed no work during the 10-minute grace period.  The court in *See's* concluded that, in the absence of any California law specifically governing employee time rounding, the federal rounding standard (29 C.F.R. § 785.48(b)) applied to claims under California law.  (*See's*, at p. 903.)

The court in *See's* rejected the plaintiff's argument that the federal rounding standard was inconsistent with Labor Code section 204 and that "employers may lawfully use the rounding method only if they engage in a 'mini actuarial process at the time of payroll' and reconcile the rounding with actual time punches every two weeks."

18

(*See's*, *supra*, 210 Cal.App.4th at p. 904.)  The court stated that Labor Code section 204 only governed the timing of payment and did not create a right to wages.  (*See's*, at pp. 904-905.)  The court also rejected the argument that most employers who used rounding reconciled the rounding with the employees' actual time entries every two weeks, stating that there was no evidence to support this claim and that "requiring an employer to engage in such a process would essentially make rounding unnecessary." (*Id.* at p. 904, fn. 6.)  The court in *See's* stated that, even if some employees were undercompensated "*during the class period,*" it was "questionable" whether the employees could recover those wages if the employer established that "*over time the rounding policy is neutral.*"  (*Id.* at p. 908, fn. 7.)  The court, however, did not explain how to determine whether a policy is neutral over a period of time and did not require any specific method of calculation for determining whether rounding has resulted in undercompensating employees.  Contrary to El Monte's argument, the court in *See's* did not state that measuring a shortfall in compensation on a per-pay-period basis was improper.

The other cases cited by El Monte also did not hold or suggest that using a per-pay-period analysis for measuring a shortfall in compensation is improper.  The court in *Adair v. Wisconsin Bell, Inc.* (E.D.Wis. Sept. 11, 2008, No. 08-C-280) 2008 WL 4224360 denied a motion for conditional certification, finding there was no evidence that the defendant's rounding policy resulted in the consistent failure to compensate employees for time actually worked.  (*Id.* at p. 11.)  The court stated, "no plaintiff has even alleged that the rounding policy caused her to be denied pay for time she actually spent working more often than she was given pay for more time than she actually worked."  (*Id.* at p. 12.)  The court in *Adair* did not state what period of time would be relevant in determining whether the defendant's rounding policy had resulted in consistent undercompensation and the court did not preclude a per-pay-period calculation.  In *East v. Bullock's Inc.* (D.Ariz. 1998) 34 F.Supp.2d 1176 the court denied the plaintiff's motion for partial summary judgment on a cause of action for violation of Arizona's statutory wage laws.  The court stated that the evidence showed that the defendant's rounding

practice had resulted in both undercompensation and overcompensation and "average[d] out sufficiently." (*Id.* at p. 1184.) The *East* court did not state over what period of time the rounding had averaged out and did not state that a per-pay-period calculation was improper.[6]

### 2. *The Claims in the Federal Action Were Factually Tenable*

In granting El Monte's motion for summary judgment the federal district court determined that the plaintiffs had failed to present evidence that they actually performed work for which El Monte did not compensate them. El Monte argues that this ruling is evidence that the rounding claim was factually untenable. El Monte also argues the plaintiffs lacked probable cause to prosecute their rounding claim because they failed to present any evidence in opposition to the motion for summary judgment supporting that claim.

A successful defense to a lawsuit, whether on a dispositive motion or at trial, does not establish that the plaintiff lacked probable cause to prosecute the lawsuit. "'Probable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in a malicious prosecution action must *separately* show lack of probable cause. Reasonable lawyers can differ, some seeing as meritless suits which others believe have merit, and some seeing as totally and completely without merit suits which others see as only marginally meritless. Suits which *all* reasonable lawyers agree totally lack merit—that is, those which lack probable

---

[6] *Waine-Golston v. Time Warner Entertainment-Advance/New House Partnership* (S.D. Cal. Mar. 27, 2013, No. 11CV1057) 2013 WL 1285535, also cited by El Monte, was filed after the district court in the federal action had granted El Monte's motion for summary judgment, and therefore does not reflect settled law at the time of the federal action. The legal tenability of an action depends on the state of the law at the time of the action. (*Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 594; *Copenbarger v. International Ins. Co.* (1996) 46 Cal.App.4th 961, 964-965.)

cause—are the least meritorious of all meritless suits. Only this subgroup of meritless suits present[s] no probable cause.'" (*Jarrow*, *supra*, 31 Cal.4th at p. 743, fn. 13.)

Moreover, "defense summary judgment on the underlying claim does not establish lack of probable cause as a matter of law. '"Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win. . . ."' [Citation.] Accordingly, there is probable cause if, at the time the claim was filed, 'any reasonable attorney would have thought the claim tenable.' [Citation.] Plainly, a claim that appears 'arguably correct' or 'tenable' when filed with the court may nevertheless fail . . . for reasons having to do with the sufficiency of the evidence actually adduced as the litigation unfolds. . . . [E]very case litigated to a conclusion has a losing party, but that does not mean the losing position was not arguably meritorious when it was pled. [Citation.] And just as an action that ultimately proves nonmeritorious may have been brought with probable cause, successfully defending a lawsuit does not establish that the suit was brought without probable cause." (*Jarrow*, *supra*, 31 Cal.4th at pp. 742-743, fn. omitted.)[7]

Thus, the fact that the district court granted El Monte's motion for summary judgment, and stated that the plaintiffs had failed to present evidence of uncompensated work, does not show lack of probable cause. El Monte's related argument, that the evidence submitted in opposition to its summary judgment motion provided no factual support for the plaintiffs' rounding claim and therefore shows a lack of probable cause, is merely another way of arguing that the plaintiffs' failure to successfully oppose the summary judgment motion establishes a lack of probable cause. Just as the district court's order granting summary judgment does not establish lack of probable cause, the plaintiffs' failure to present evidence that would justify denying the motion for summary

---

[7] An adverse summary judgment ruling on the merits in an underlying federal action, however, does establish the element of favorable termination. (See *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341-342; *Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149.)

judgment motion does not establish lack of probable cause.  In addition, in opposition to El Monte's motion for summary judgment, the plaintiffs filed declarations by 16 employees stating that they started working immediately after clocking in, which tends to show that the federal action was factually tenable.

The cases cited by El Monte, *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 332-333 (*Franklin Mint*), *Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 321 (*Slaney*), and *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1191 (*Mattel*), are distinguishable.  Contrary to El Monte's assertions, they do not stand for the proposition that the district court's order granting El Monte's motion for summary judgment demonstrates lack of probable cause.

*Franklin Mint*, *supra*, 184 Cal.App.4th 313, involved an appeal from a judgment dismissing a malicious prosecution action after the trial court found that the defendant had probable cause to prosecute the underlying action for false advertising and trademark dilution and granted a directed verdict for the defendant.  (*Id.* at p. 320.)  The federal district court in the underlying action had awarded the defendant in that action its attorneys' fees under the Lanham Act (see 15 U.S.C. § 1117(a)), which "permits an award of attorney fees to a prevailing party only '"in exceptional circumstances,"'" such as "'""when the non-prevailing party's case 'is groundless, unreasonable, vexatious, or pursued in bad faith.'"'"  (*Franklin Mint*, at p. 329.)  The court in the underlying action found that there was "'no legal basis'" for the trademark dilution claim, that the contention on which the trademark dilution claim was based was "absurd . . . to say the least," and that the false advertising and trademark dilution claims were "'groundless and unreasonable'" and fell "'just short of frivolous.'"  (*Id.* at pp. 320, 328, 331-332.)  The district court in the underlying federal action here made no such findings.

*Slaney*, *supra*, 115 Cal.App.4th 306, involved an appeal from the denial of a special motion to strike a malicious prosecution complaint.  The plaintiffs in the underlying action were insureds who had brought a bad faith claim against their insurer arising out of the denial of a claim for damage to an airplane.  The insurer had filed a cross-complaint against the insureds and a prior owner of the plane who had prepared an

22

estimate of the cost to repair the plane, alleging a fraudulent conspiracy to inflate the repair cost. (*Id.* at pp. 310-311.) The trial court granted summary judgment in favor the prior owner on the cross-complaint and dismissed several claims against the insureds at trial, including the conspiracy claim, "'as being without any substantive basis in law and/or fact.'" (*Id.* at p. 313, italics omitted.) The jury found that the insurer had acted in bad faith and with malice toward its insureds. (*Ibid.*) The prior owner then filed a malicious prosecution complaint against the insurer. (*Id.* at pp. 313-314.) The court in *Slaney* held that the summary judgment in favor of the prior owner in the underlying action did *not* establish probable cause as a matter of law, and that "proof of lack of probable cause requires more." (*Id.* at p. 320, citing *Jarrow*, *supra*, 31 Cal.4th at pp. 742-743.) It was only because that trial court in the underlying action had found that the conspiracy claim was legally and factually groundless and the jury had found the insurer had acted in bad faith and with malice, together with the order granting of summary judgment, that in the malicious prosecution action there were "inferences of lack of probable cause and malice." (*Id.* at p. 321.) There is no finding by the district court in the federal action here that the plaintiffs' rounding claim was legally and factually groundless, malicious, or brought in the kind of bad faith with which an insurer breaches the implied covenant of good faith and fair dealing.

*Mattel*, *supra*, 99 Cal.App.4th 1179, also involved an appeal from the denial of a special motion to strike a malicious prosecution complaint. The federal court in the underlying trademark infringement action had not only granted summary judgment in favor of the defendant but had also imposed monetary sanctions against the plaintiff's attorney under rule 11 of the Federal Rules of Civil Procedure. (*Mattel*, at p. 1191.) The court in *Mattel* took judicial notice of the Rule 11 findings and held that those findings established a probability of prevailing on the element of lack of probable cause. (*Ibid.*) There are no such Rule 11 findings (or their equivalent) here.

23

El Monte could show that the rounding claim was factually untenable only by presenting evidence that the defendants had relied on facts they had no reasonable cause to believe were true. (See *Soukup*, *supra*, 39 Cal.4th at p. 292; *Cole*, *supra*, 206 Cal.App.4th at p. 1106.) El Monte presented no such evidence.[8] The fact that the district court in the federal action granted El Monte's motion for granted summary judgment does not show that the defendants relied on facts they had no reasonable cause to believe were true.

Therefore, El Monte failed to establish a probability of prevailing on the element of lack of probable cause with respect to the federal action. The trial court properly granted Canlas's special motion to strike.

E. *El Monte Established a Probability of Prevailing on its Malicious Prosecution Complaint Based on the <u>Yanez</u> Action*

The trial court concluded that the *Yanez* action was legally tenable but factually untenable. Aequitas argues the trial court was right on the former issue and wrong and the latter, while El Monte argues the converse. Aequitas also argues El Monte failed to establish a probability of prevailing on the element of malice. We conclude the trial court was correct on all counts.

---

[8] El Monte argues that the defendants initially pursued the theory that El Monte's rounding policy resulted in the systematic undercompensation of employees, but later, in opposition to the summary judgment motion, changed their theory of recovery to a per-pay-period claim. Contrary to El Monte's argument, the defendants' per-pay-period claim was not a new theory of recovery. The defendants argued in opposition to the motion for summary judgment that the court should consider each biweekly pay period in determining whether El Monte's rounding policy resulted in the systematic undercompensation of employees. Their argument was consistent with the allegation in the complaint that the rounding policy had resulted in the systematic undercompensation of employees.

1. *Probable Cause*

    a. *Legal Tenability*

The class action complaint in the *Yanez* action alleged that El Monte's vacation accrual limit was unreasonable because it forced employees to use their earned vacation hours within a short period of time. The complaint included a copy of El Monte's written policy showing the rate of vacation time accrual based on length of employment and the limit on accrual of vacation hours. The trial court concluded that the plaintiffs' claim was legally tenable based on DLSE opinion letters and the absence of any authority that a vacation accrual limit does not have to be reasonable.

As noted, the court in *Boothby*, *supra*, 6 Cal.App.4th 1595, held that Labor Code section 227.3 did not prohibit a "no additional accrual" policy preventing the accrual of additional paid vacation time in excess of a specified limit. (*Boothby*, at pp. 1601-1602.) The court, however, did not decide whether the particular policy at issue in that case was "a valid 'no additional accrual' policy" (*id.* at p. 1603) and did not address the question whether a vacation accrual limit had to be "reasonable."

DLSE stated in several opinion letters that any limit on vacation accrual must be reasonable and that an employer must allow its employees a reasonable period of time after earning vacation benefits to use their accrued vacation. The opinion letters stated that a policy prohibiting employees from earning further vacation benefits under an unreasonable limit would violate Labor Code section 227.3. The opinion letters included a discussion of Labor Code section 227.3, *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, *Boothby*, *supra*, 6 Cal.App.4th 1595, *Henry v. Amrol, Inc.* (1990) 222 Cal.App.3d Supp. 1, *Berardi v. General Motors Corp.* (1983) 143 Cal.App.3d Supp. 7, and the Labor Commissioner's Interpretive Bulletin 86-3. El Monte has not cited any authority holding that a vacation accrual limit can be unreasonable and still comply with Labor Code section 227.3.

DLSE's construction of a statute as expressed in its opinion letters, although not binding on the courts, "is entitled to consideration and respect." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1105, fn. 7; see *Kilby v. CVS Pharmacy, Inc.* (2016) 63 Cal.4th 1, 13 ["we generally consider DLSE opinion letters with respect"]; *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1029, fn. 11 [DLSE's opinion letters, """""while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"""""].)  The DLSE opinion letters on which the plaintiffs relied in the *Yanez* action, combined with the absence of authority holding that the opinion letters were incorrect or that a vacation accrual limit can be unreasonable, established the legal tenability of the plaintiffs' claim in the *Yanez* action that El Monte's vacation accrual policy was invalid.

The complaint in the *Yanez* action also alleged that El Monte's vacation policy forced employees to either use their earned vacation sooner than they would choose to use it or "forfeit their vested vacation earnings under Defendants' 'Use It or Lose It' policy, in violation of California Labor Code § 227.3."  El Monte argues that this claim was a legally untenable alternate theory of recovery because El Monte's policy was a "no additional accrual" rather than a "use it or lose it" policy.  El Monte invokes the rule that "'[a]n action for malicious prosecution lies when but one of alternate theories of recovery is maliciously asserted.'" (*Soukup*, *supra*, 39 Cal.4th at p. 292).  Construing the *Yanez* complaint liberally and in the light most favorable to Aequitas (see *Yee v. Cheung*, *supra*, 220 Cal.App.4th at p. 200; *Sangster v. Paetkau*, *supra*, 68 Cal.App.4th at p. 165), the allegation that El Monte's policy was an impermissible "use it or lose it" policy was a characterization of the facts alleged in the complaint rather than an alternate theory of recovery.

b. *Factual Tenability*

The trial court found that the *Yanez* action was factually untenable because undisputed evidence showed that, at the time of filing the complaint, Aequitas knew that

26

Yanez had not suffered an injury as a result of El Monte's vacation accrual policy. The court concluded that therefore Yanez could not maintain a claim under the unfair competition law and was not a suitable class representative. Characterizing lack of injury as lack of standing to sue on behalf of the class, Aequitas argues that Yanez's lack of standing as class representative did not render the class claims factually untenable.[9] Aequitas does not challenge the court's determination that, at the time of filing the complaint, Aequitas knew that Yanez had not suffered an injury.

Yanez brought the *Yanez* action both individually and on behalf of other putative class members as a class representative. Contrary to Aequitas's argument, El Monte did not need to show that the class claims were factually untenable in order to establish a probability of prevailing on the element of lack of probable cause. Because the evidence showed that Yanez's individual claims were factually untenable, there was no probable cause for Yanez's individual claims. Just as there must be probable cause for each cause of action alleged and each theory of recovery asserted (*Soukup*, *supra*, 39 Cal.4th at p. 292), there must be probable cause for the individual claims alleged by Yanez as a named plaintiff.

### 2. *Malice*

As noted, lack of probable cause together with the defendant's knowledge that a claim has no merit can support an inference of malice. (*Jay*, *supra*, 218 Cal.App.4th at p. 1543; *Daniels*, *supra*, 182 Cal.App.4th at p. 226; *Swat-Fame*, *supra*, 101 Cal.App.4th at p. 634.) The factual untenability of Yanez's individual claims, together with the evidence

---

[9]     Aequitas also argues Yanez's lack of standing could not establish a lack of probable cause because such a ruling would not have been a termination on the merits. This argument confuses lack of probable cause with the separate element of favorable termination. Aequitas does not argue the trial court in the *Yanez* action sustained the demurrer to the complaint based on lack of standing and does not challenge the finding by the trial court in this action that El Monte established a probability of prevailing on the element of favorable termination.

that, at the time of filing the complaint, Aequitas knew that Yanez had not suffered an injury, supports an inference of malice.

The evidence, in addition to lack of probable cause, supporting an inference of malice included Bae's May 7, 2012 letter threatening to file the *Yanez* action if El Monte did not agree to settle the *Villalpando* action and the federal action. Bae warned of "additional litigation with no end in sight" if El Monte did not settle those cases. Counsel for El Monte informed Bae that, because Yanez had not reached the vacation accrual limit, there was no factual basis for his claim, and reminded Bae that El Monte had already produced the time records demonstrating this fact. Nevertheless Aequitas proceeded to file the *Yanez* action despite the fact that, as Yanez later admitted in his November 7, 2012 deposition, Yanez had not suffered any injury. Even after that admission, Aequitas did not dismiss Yanez's individual claims at any time before the court sustained El Monte's demurrer and entered of a judgment of dismissal on January 30, 2013.

Filing an action without probable cause for the purpose of forcing a settlement in a separate, unrelated action is improper and can support an inference of malice. (See *Jay*, *supra*, 218 Cal.App.4th at p. 1545 [evidence supported an inference that the attorney had sued several limited partners not "to vindicate a legal right but to act as pawns in [the defendants'] ongoing chess game against [the limited partnership]"]; *Cole*, *supra*, 206 Cal.App.4th at p. 1114.) Failing to adequately investigate the facts before filing a lawsuit or prosecuting a claim with indifference as to the merits of the claim also can support an inference of malice. (*Cole*, at p. 1120; *Sycamore*, *supra*, 157 Cal.App.4th at p. 1409.) And continuing to prosecute a claim instead of dismissing the claim immediately after it becomes clear that the claim lacks probable cause can support an inference of malice. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 970; *Daniels*, *supra*, 182 Cal.App.4th at p. 226; *Sycamore*, at pp. 1408-1409.)

Bae's letter threatening to file the *Yanez* action if El Monte did not agree to settle the other two actions supports an inference that Bae filed the *Yanez* action for the purpose of forcing a settlement in the two then-pending cases against El Monte. The evidence

28

also supports an inference that Bae either knew that Yanez had suffered no injury and filed the *Yanez* action anyway, or failed to adequately investigate the facts (including simply asking Yanez whether El Monte's vacation accrual policy had harmed him in any way) before filing the complaint and was indifferent to the merits of Yanez's claims. And the evidence supports an inference that, after Yanez's deposition on November 7, 2012 when it became clear that Yanez had suffered no injury, Bae and Aequitas continued to prosecute Yanez's claims. Thus, El Monte made a sufficient showing that its malicious prosecution claim against Bae and Aequitas had at least "'minimal merit'" (*Oasis West*, *supra*, 51 Cal.4th at p. 819) with respect to malice.

The same holds true for the other attorneys at Aequitas who worked on the El Monte cases, Cho, Hodgkins, and Love, all of whom were counsel of record for Yanez in the *Yanez* action. Counsel of record owe a duty of care to their clients "that encompasse[s] 'both a knowledge of the law and an obligation of diligent research and informed judgment.'" (*Cole*, *supra*, 206 Cal.App.4th at p. 1116.) An attorney whose name appears on the pleadings and other court filings as counsel of record cannot avoid liability for malicious prosecution by remaining ignorant of the case or indifferent to its merits. (See *id.* at p. 1117 ["[n]or should an associated attorney whose name appears on all filings be able to avoid liability by intentionally failing to learn anything about a case that may turn out to have been maliciously prosecuted in whole or in part"]; *Sycamore*, *supra*, 157 Cal.App.4th at p. 1409 [counsel's failure to familiarize themselves with the case before associating in as co-counsel would suggest indifference as to its merits and create an inference of malice].)

It is a reasonable inference from the evidence that Cho, Hodgkins, and Love, as counsel of record for Yanez, were aware of Bae's May 7, 2012 letter threatening to file two additional class actions if El Monte did not settle the *Villalpando* action and the federal action. It is also a reasonable inference from the evidence that, as counsel of record with an obligation to be familiar with the case, they shared Bae's intent in filing the *Yanez* action for the purpose of forcing a settlement in the other two actions, and they either knew that Yanez had not suffered an injury or failed to adequately investigate the

facts and were indifferent to the merits of Yanez's claims. The four attorneys' failure to dismiss Yanez's claims immediately after Yanez admitted in his deposition that he had suffered no injury further supports an inference of malice. The trial court properly denied Aequitas's special motion to strike by Aequitas and all of its attorneys working on the case.

F.     *The Trial Court Did Not Abuse Its Discretion in Awarding Canlas $48,602 in Attorneys' Fees*

El Monte argues that the $48,602 award of attorneys' fees was excessive and unreasonable. El Monte challenges the total amount of the award, the fees awarded for 38.8 hours spent researching and preparing Canlas's special motion to strike, and the fees awarded for 12.5 hours spent preparing factual histories and summaries of the underlying litigation. El Monte also challenges the trial court's order sustaining two objections to Augustini's declaration.

1.     *Governing Law and Standard of Review*

A prevailing defendant on a special motion to strike is entitled to a mandatory award of attorneys' fees. (Code Civ. Proc., § 425.16, subd. (c); *Trapp v. Naiman* (2013) 218 Cal.App.4th 113, 122.) The trial court may calculate the amount of a fee award under Code of Civil Procedure section 425.16 using the lodestar method. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131-1132; *Jackson v. Yarbray* (2009) 179 Cal.App.4th 75, 93.) "Under that method, the court 'tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work.'" (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 491.) Canlas sought, and the trial court awarded, fees using the lodestar method.

We review the amount of a fee award under Code of Civil Procedure section 425.16, subdivision (c), for abuse of discretion. (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 487.) "'The reasonableness of attorney fees is within the discretion of the trial court, to be determined from a consideration of such factors as the nature of the litigation, the complexity of the issues, the experience and expertise of counsel, and the amount of time involved. [Citation.]' [Citations.] The trial court possesses personal expertise in the value of the legal services rendered in the case before it." (*Russell v. Foglio* (2008) 160 Cal.App.4th 653, 661.) "'A trial court's attorney fee award will not be set aside "absent a showing that it is manifestly excessive in the circumstances."'" (*Lunada*, at p. 487.) We also review the trial court's rulings on evidentiary objections for abuse of discretion. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2016) 245 Cal.App.4th 19, 33.)

2. *The Amount of Attorneys' Fee Awarded Was Reasonable*

El Monte argues that the 129.6 hours claimed by Canlas in connection with the special motion to strike was excessive and unreasonable because counsel for Canlas simply copied the motion papers prepared by counsel for Aequitas, and counsel for Canlas performed very little independent work on the special motion to strike.[10] For the same reason, El Monte also challenges 38.8 hours claimed for researching and drafting the special motion to strike. According to El Monte, the billing entries suggest that counsel for Canlas spent 38.8 hours preparing a special motion to strike before counsel for Aequitas filed their motion on February 4, 2014, and then abandoned their motion and instead copied the motion filed on behalf of Aequitas.

---

[10]    Canlas initially claimed a total of 129.6 hours for preparing the special motion to strike and supporting papers and attending the hearing, preparing the motion for attorneys' fees, and attending the hearing. Canlas later conceded that 5.2 hours of attorney time was not reasonably necessary and reduced its claim by that amount.

31

The trial court noted that the special motion to strike filed by counsel for Canlas repeated verbatim many of the arguments in the special motion to strike filed by counsel for Aequitas. The court stated that the billing records indicated counsel for Canlas had discussed the motion with counsel for Aequitas, and work by counsel for Canlas might have contributed to the motion filed by counsel for Aequitas. The court found that, even if counsel for Canlas had adopted much of the motion filed on behalf of Aequitas, "[t]he research and analysis performed by [counsel for Canlas] would have been necessary to make an informed decision on whether to adopt portions of [Aequitas's] brief. Also . . . Canlas Defendants asserted at least two arguments relating solely to Canlas Defendants. . . . Contrary to [El Monte's] assertion, it was critical for Canlas Defendants to address the issue of whether they could be liable for malicious prosecution related to the Yanez Action. Given the complexity of the anti-SLAPP motion, the 38.8 hours challenged by Plaintiff do not appear unreasonable." The trial court granted the motion and awarded $48,602 in fees.

Canlas's special motion to strike was a complex motion that required an understanding of both the malicious prosecution action and the underlying federal action. The trial court did not abuse its discretion in concluding that the time spent by counsel for Canlas preparing the special motion to strike before receiving the motion by Aequitas was reasonably necessary, even if counsel for Canlas later decided to adopt much of the Aequitas motion.

The trial court also found that counsel for Canlas had to spend additional time researching and briefing issues unique to Canlas that the motion by Aequitas did not address. Canlas argued in support of its special motion to strike that it did not act with malice in connection with the federal action because it was a passive co-counsel, and that it was not counsel of record and did not participate in the *Yanez* action. El Monte contends the first argument was contrary to the rule that an attorney's indifference to the merits of an action in which the attorney is co-counsel of record can constitute malice (see *Cole*, *supra*, 206 Cal.App.4th at pp. 1115-1120; *Sycamore*, *supra*, 157 Cal.App.4th at pp. 1409-1411), and the second argument was irrelevant because El Monte never

32

alleged that Canlas was counsel of record in the *Yanez* action.[11]  The trial court was in the best position to evaluate those arguments and whether the time the attorneys spent litigating them was reasonable in the context of this litigation.  (See *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 651 ["the trial court . . . is in the best position to evaluate the services rendered by an attorney in his courtroom"]; *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 562 [rejecting an argument that attorney time spent on particular tasks was duplicative].)  The arguments were not so meritless and unnecessary that the court abused its discretion by awarding fees for spending time on them.

El Monte also argues that the trial court abused its discretion by awarding fees for 12.5 hours spent preparing factual histories and summaries of the underlying actions, when Canlas was co-counsel in the federal action and had a legal and ethical obligation to stay informed regarding that proceeding.  El Monte argues that counsel for Canlas did not have to perform these tasks because Canlas could have informed their attorneys about the federal action.  It was entirely reasonable, however, for counsel for Canlas to prepare an evaluation of the several underlying actions.  Reviewing and analyzing the facts and procedure giving rise to a malicious prosecution action is a core function of any attorney representing a party in such a case.  (See *Coito v. Superior Court* (2012) 54 Cal.4th 480, 497 [attorney has "duty and prerogative to investigate matters thoroughly"]; *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1069 ["investigation of a potential claim is normally and reasonably part of effective litigation, if not an essential part of it"].)  The trial court's decision to award attorneys' fees for these 12.5 hours was not an abuse of discretion.

---

[11]     Which is incorrect.  El Monte alleged in its complaint that Canlas "acted as co-counsel with [Aequitas] in . . . at least some of the underlying lawsuits" and that Canlas was "vicariously responsible . . .  for the misconduct of [Aequitas] in connection with the underlying cases."

### 3. *The Trial Court Did Not Abuse Its Discretion in Excluding Portions of Augustini's Declaration*

Augustini stated in paragraph 16 and paragraph 17 of his declaration in opposition to Canlas's motion for attorneys' fees:

"16. Based upon the pre-February 4 time entries, the 'me too' and largely duplicative nature of the [Canlas] motion, and the amount of time and referenced work performed between February 4 and February 7, 2014—the time between the date they received and reviewed the [Aequitas] brief and the date they filed their own brief—it appears that [Canlas] may have done some preliminary work on an anti-SLAPP Motion, then scrapped that motion altogether and instead decided to essentially copy, with minor tweaks, the [Aequitas] *already filed* motion. As such, most if not all of the work performed prior to February 4, 2014 was either unnecessary 'fluff' time or encompassed work that [Canlas] opted to abandon rather than pursue. In either event, [El Monte] should not be required to pay for unnecessary or 'scrapped' work.

"17. . . . As this Court is aware, the Complaint itself went into great detail regarding all of the subject matters that are the subject of these purported summaries, and organized the entire procedural history of all of the cases in a concise and well-organized manner. Much of the work reflected in the entries listed above also appear to be non-specific 'fluff' time, and includes work on the Yanez case for instance that not even [El Monte] claimed the [Canlas] Defendants were counsel on. This time also should be excluded."

Canlas objected that these statements were irrelevant, legal conclusions, and argumentative. The trial court sustained the objections. El Monte challenges these rulings on appeal.

The statements by Augustini were pure argument without any evidentiary facts, and the trial court properly excluded them as argumentative. (See *In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, fn. 3 ["[t]he proper place for argument is in points and authorities, not declarations"]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2016) ¶ 9:49.5 ["[i]t is *improper* to include legal

34

arguments in a declaration"].)  Moreover, because El Monte's memorandum of points and authorities in opposition to Canlas's motion for attorneys' fees made the same arguments, any error in the exclusion of Augustini's statements in his declaration was harmless.  (See *Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.)

## DISPOSITION

The orders of April 7, 2014 and March 9, 2015 granting Canlas's special motion to strike and awarding Canlas $48,602 in attorney fees are affirmed.  The order of May 20, 2014 denying Aequitas's special motion to strike is also affirmed.  Canlas is to recover its costs on appeal.  Aequitas and El Monte are to bear their costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

BLUMENFELD, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.